[Cite as *State v. Pigge*, 2010-Ohio-6541.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | |
|---|---|
| STATE OF OHIO, | : |
| | : |
| Plaintiff-Appellee, | : Case No. 09CA3136 |
| | : |
| vs. | : **Released: December 21, 2010** |
| | : |
| CASEY L. PIGGE, | : <u>DECISION AND JUDGMENT</u> |
| | : <u>ENTRY</u> |
| Defendant-Appellant. | : |

_____
APPEARANCES:

Peter Galyardt, Columbus, Ohio, for Appellant.

Michael M. Ater, Ross County Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

McFarland, P.J.:

{¶1} Defendant-Appellant, Casey Pigge, appeals the Ross County Court of Common Pleas' judgment that found him guilty of the following criminal offenses: (1) two counts of aggravated murder, in violation of R.C. 2903.01(A); (2) aggravated robbery, in violation of R.C. 2911.01(A)(1); (3) aggravated burglary, in violation of R.C. 2911.11; (5) aggravated arson, in violation of R.C. 2909.02; (6) burglary, in violation of R.C. 2911.12(A)(2); and (7) tampering with evidence, in violation of R.C. 2921.12. He asserts that the trial court improperly accepted his guilty plea because he did not

knowingly, intelligently, and voluntarily decide to plead guilty. Specifically, appellant contends that the trial court failed to adequately explain his constitutional right to compulsory process so that he could make a knowing, intelligent, and voluntary decision to plead guilty. The plea hearing transcript plainly shows that the trial court strictly complied with Crim.R. 11(C)(2)(c) both by using the literal terms of the rule and by explaining appellant's right to compulsory process in a reasonably intelligible manner. Therefore, we disagree with appellant that the trial court did not adequately explain his compulsory process right. Accordingly, the trial court did not erroneously determine that appellant entered a knowing, voluntary, and intelligent plea.

{¶2} Appellant additionally argues that the trial court wrongly sentenced him for both aggravated arson and tampering with evidence. He contends that the two offenses constitute allied offenses of similar import and, thus, that he may be sentenced for only one of those offenses. Because the two offenses do not correspond to such a degree that the commission of one necessarily results in the commission of the other, the two offenses are not allied offenses of similar import. Consequently, the trial court did not improperly sentence appellant for these two offenses.

{**¶3**} Accordingly, we overrule appellant's two assignments of error and affirm the trial court's judgment.

I.

FACTS

{**¶4**} On September 5, 2008, appellant violently murdered Rhonda Summer.  As the prosecutor recited:  "[Appellant] pulled out a knife and at least five times he ripped it across [Summer's] throat.  It caused at least eight inch lacerations, severed her carotid artery and jugular veins.  He then sat on the couch and watched her die.  He went upstairs to wash the blood off of himself.  He went downstairs to stole [sic] some of her money then set the house on fire."[1]

{**¶5**} On September 12, 2008, the Ross County Grand Jury returned an indictment that charged appellant with:  (1) two counts of aggravated murder, in violation of R.C. 2903.01(A), with death penalty specifications; (2) aggravated robbery, in violation of R.C. 2911.01(A)(1); (3) aggravated burglary, in violation of R.C. 2911.11; (4) aggravated arson, in violation of R.C. 2909.02; (5) burglary, in violation of R.C. 2911.12(A)(2); (6) tampering with evidence, in violation of R.C. 2921.12; and (7) gross abuse of a corpse, in violation of R.C. 2927.01.

**{¶6}** On August 25, 2009, at a pre-trial hearing, the state requested the court to dismiss the death penalty specifications due to the state's expert's opinion that appellant suffers from mental retardation.  Apparently, the dismissal of the death penalty specifications prompted appellant to decide to engage in plea negotiations with the state, which ultimately resulted in his decision to plead guilty.

**{¶7}** On October 27, 2009, the court held a change of plea hearing and engaged in a Crim.R. 11(C) colloquy with appellant.  One of the first questions the court asked appellant was whether he has "any sort of mental or physical disability."  Appellant responded that he did not.  Appellant stated that he understood why he was present at the hearing, and the court then explained the rights appellant would waive by pleading guilty:

> " * * * You have the right to a speedy and public trial by trial [sic] or if you choose, by a judge[;] by pleading guilty you are giving up that right.  Do you understand that?
> [Appellant]:  Yes your honor.
> The Court:  [Appellant], all twelve jurors, if it is a jury trial, or the judge if it is a trial to court, must be convinced that the state has proved each and every element of the charges against you beyond a reasonable doubt before you can be convicted of those charges.  By pleading guilty you are giving up that right.  Do you understand that?
> [Appellant]:  Yes your honor.
> The Court:  * * * You have the right not to be forced to testify at trial in these cases.  That means that you can not [sic]

---

[1] Because this appeal originates from a guilty plea, the record contains little explanation of the facts constituting the crimes.  We have used the state's recitation of the crime as stated in the sentencing hearing transcript.

be called to the witness stand if you do not wish to go; your decision not to testify can not [sic] be used against you[;] in fact if it's a jury trial and you ask me to I have to instruct the jury the can not [sic] consider your decision not to testify for any purpose. By pleading guilty you are giving up that right. Do you understand that?

    [Appellant]: Yes your honor.

    The Court: You also have the right to confront any witnesses the state of Ohio might have against you at trial. That means you have the right to be here in court when those witnesses testify; you have the right for your attorneys to ask questions of those witnesses on cross-examination. By pleading guilty you are giving up that right. Do you understand that?

    [Appellant]: Yes your honor.

    The Court: You also have the right to a compulsory process. That means you have the right to have subpoena's [sic] issued for any witness that you want to appear on your behalf in court. B[y] pleading guilty you are giving up that right. Do you understand that?

    [Appellant]: Yes your honor.

    * * * *."

{¶8} The court asked appellant if he reviewed the guilty plea petition with his attorneys. He stated that he had and indicated that he understood it. Appellant further stated that he had signed the plea form. With respect to appellant's right to compulsory process, the form advised appellant that he has "the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses in my favor."

{¶9} The court asked: "Do you have any questions about anything we have just been over in these matters that I can answer for you? Please don't

hesitate to ask if you have a question." Appellant stated that he did not have any questions. The court further asked the prosecutor and appellant's attorneys whether they had "anything with regards to the plea[]." Both stated that they did not. The court then determined "that [appellant] understands all of his rights as set forth in [Crim.R. 11(C)], he has been advised of his constitutional rights, stated in open court[,] that he understood and waived those rights. The court finds that [appellant's] guilty pleas in both these cases were made knowingly, voluntarily, intelligently and [of appellant]'s own free will."

{¶10} On November 16, 2009, the court sentenced appellant. The court observed that: (1) the two counts of aggravated murder merged and that the state elected to proceed to sentencing on the first count; and (2) counts four (aggravated burglary) and six (burglary) merged with count three (aggravated robbery). The court then sentenced appellant to: (1) life with parole eligibility after thirty years for the aggravated murder offense; (2) six years for the aggravated robbery offense; (3) six years for the aggravated arson offense; and (4) two years for the tampering with evidence offense. The court ordered that appellant serve the aggravated murder and aggravated robbery sentences consecutively and that he serve the aggravated

arson and tampering with evidence offenses concurrently with the aggravated robbery and aggravated murder offenses.

## II.

## ASSIGNMENTS OF ERROR

{¶11} Appellant timely appealed the trial court's judgment and raises two assignments of error.

First Assignment of Error:

Mr. Pigge was deprived of his right to due process under the Fourteenth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution when the trial court accepted an unknowing, unintelligent, and involuntary guilty plea.

Second Assignment of Error

The trial court erred when it convicted Mr. Pigge of both aggravated arson under R.C. 2909.02(A)(2), and tampering with evidence under R.C. 2921.12(A)(1), as those offenses are allied offenses of similar import, and the record is silent as to whether the offenses were committed with a separate animus.

## III.

## GUILTY PLEA

{¶12} In his first assignment of error, appellant argues that the trial court erred by accepting his guilty plea when he did not knowingly, intelligently, and voluntarily enter it. In particular, appellant contends that

he did not knowingly, intelligently, and voluntarily enter his guilty plea because the trial court did not adequately explain his right to compulsory process in a manner that was reasonably intelligible to appellant, a mentally retarded individual. Appellant essentially argues that because he is mentally retarded, the trial court possessed a heightened duty to define his right to compulsory process in terms that a mentally retarded individual could understand. Appellant contends that his plea is invalid because the "court failed to adequately advise him that he had the right to compulsory process, which meant that the trial court would use its power to compel any defense witnesses to appear and testify in court, and that [appellant] did not have to secure his own witnesses." Appellant asserts that "the trial court should have further explained that [appellant]'s witnesses would not be permitted to ignore the subpoena, as the power to subpoena them would be coming from the court, and that [appellant] did not have to secure such witnesses on his own." Appellant contends that he "could not have understood the nuanced legal meanings of 'compulsory process' and 'subpoenas'" and that the court should have informed him that it "would use its power to secure [appellant]'s witnesses, and if necessary, force them to testify on his behalf."

{¶13} The ultimate inquiry when reviewing a trial court's acceptance of a guilty plea is whether the defendant entered the plea in a knowing,

intelligent, and voluntary manner. See *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at ¶7, citing *State v. Engle* (1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450. A defendant enters a plea in a knowing, intelligent, and voluntary manner when the trial court fully advises the defendant of all the constitutional and procedural protections set forth in Crim.R. 11(C) that a guilty plea waives. See *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶25, citing *Engle*, 74 Ohio St.3d at 527; *State v. Eckler*, Adams App. No. 09CA878, 2009-Ohio-7064, at ¶48. Thus, when a court reviews a trial court's acceptance of a guilty plea, it must independently review the record to ensure that the trial court followed the dictates of Crim.R. 11(C). See *State v. Kelley* (1991), 57 Ohio St.3d 127, 128, 566 N.E.2d 658 ("When a trial court or appellate court is reviewing a plea submitted by a defendant, its focus should be on whether the dictates of Crim.R. 11(C) have been followed."); *Eckler* at ¶48 (noting that standard of review is de novo); *State v. Hamilton*, Hocking App. No. 05CA4, 2005-Ohio-5450, at ¶9; see, also, *State v. Gilmore*, Cuyahoga App. Nos. 92106, 92107, 92108, and 92109, 2009-Ohio-4230, at ¶12.

{¶14} Crim.R. 11(C)(2) (a)-(c) sets forth the process a trial court must follow before accepting a guilty plea. The rule prohibits a trial court from accepting a guilty plea unless the court personally addresses the defendant

and (1) determines "that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing:" (2) informs "the defendant of and determin[es] that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence"; and (3) informs "the defendant and determin[es] that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

{¶15} When a trial court engages in a plea colloquy with the defendant, it must strictly comply with Crim.R. 11(C)(2)(c), which sets forth the constitutional rights a guilty plea waives.  Thus, the trial court must explain to the defendant, either literally or in a reasonably intelligible manner, that a guilty plea waives (1) the right to a jury trial, (2) the right to confront one's accusers, (3) the right to compulsory process to obtain witnesses, (4) the right to require the state to prove guilt beyond a reasonable

doubt, and (5) the privilege against compulsory self-incrimination. *Veney* at syllabus and ¶¶18, 27 (stating that trial court must literally comply with Crim.R. 11(C)(2)(c), but its failure to do so will not invalidate a plea when the trial court adequately conveys the information to the defendant in a reasonably intelligible manner). Failure to do so renders the plea invalid. Id. at syllabus.

{¶16} "The best way to ensure that pleas are entered knowingly and voluntarily is to simply follow the requirements of Crim.R. 11 when deciding whether to accept a plea * * *." *Clark* at ¶29; see, also, *State v. Ballard* (1981), 66 Ohio St.2d 473, 479, 423 N.E.2d 115 (stating that "the best method of informing a defendant of his constitutional rights is to use the language contained in Crim.R. 11(C), stopping after each right and asking the defendant whether he understands the right and knows that he is waiving it by pleading guilty"). Thus, "'[l]iteral compliance with Crim.R. 11, in all respects, remains preferable to inexact plea hearing recitations.'" *Clark* at ¶29, quoting *State v. Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, at ¶19, fn.2. However, "a rote recitation of Crim.R. 11(C) is not required, and failure to use the exact language of the rule is not fatal to the plea." *Ballard*, 66 Ohio St.2d at 480. Instead, the trial court need only "explain[] or refer[]" to the Crim.R. 11(C) protections "in a manner

reasonably intelligible to that defendant." Id.; see, also, *Veney* at ¶27

(stating that "a trial court can still convey the requisite information on

constitutional rights to the defendant even when the court does not provide a

word-for-word recitation of the criminal rule, so long as the trial court

actually explains the rights to the defendant"). Thus, a reviewing court

should not invalidate a plea merely because a trial court did not engage in a

"formalistic litany of constitutional rights." *Ballard*, 66 Ohio St.2d at 480.

{¶17} A trial court "may not relieve itself of the requirement of

Crim.R. 11(C) by exacting comments or answers by defense counsel as to

the defendant's knowledge of his rights." Id. at 481. However, a reviewing

court may consider "such a colloquy * * * in the totality of the matter."[2] Id.

Thus, if the record shows that the trial court ascertained that defense counsel

advised the defendant of his rights, a reviewing court may consider this as a

factor in determining whether the totality of the circumstances supports the

---

[2] The Supreme Court of Ohio has never explicitly overruled or limited this aspect of *Ballard*. However, we observe that subsequent cases seem to have limited any "totality of the circumstances" inquiry only when determining if the trial court substantially complied with Crim.R. 11(C)'s non-constitutional provisions. See, e.g., *Veney*. Moreover, *Veney* distinguished *Ballard* and stated that "the court cannot simply rely on other sources to convey these rights to the defendant" and that it would not "'presume a waiver of these * * * important [constitutional] rights from a silent record.'" Id at ¶29, quoting *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274. It is not clear whether this statement is intended to be a repudiation of the *Ballard* totality of the circumstances approach as it pertains to the constitutional rights outlined in Crim.R. 11(C)(2)(c), or whether this statement simply means that it will not allow "other sources" to substitute for the court's duty to convey the information when the court completely fails to convey the information. Unlike *Ballard*, *Veney* involved a situation where the trial court completely failed to mention a certain right. In contrast, in *Ballard* the court explained the constitutional rights, just not in the exact terms of Crim.R. 11(C). *Veney* does not seem to reject any idea that a court may look to "other sources" as additional evidence that a court adequately advised a defendant of his constitutional rights. Thus, although the continuing validity of this proposition from *Ballard* may be in question, we do not believe that it has clearly been invalidated such that we are unjustified in following it.

trial court's finding that the defendant knowingly, intelligently, and voluntarily entered the plea.  Id. (noting that "the record shows that the trial judge initially ascertained from the defense counsel that the defendant had been advised of his rights"); see, also, *State v. McKenna*, Trumbull App. No. 2009-T-0034, 2009-Ohio-6154, at ¶67; *State v. DeArmond* (1995), 108 Ohio App.3d 239, 245, 670 N.E.2d 531, quoting *Riggins v. McMackin* (C.A.6, 1991), 935 F.2d 790, 795 (construing Ohio Crim.R. 11), and citing *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, fn.3 (stating that inquiry into whether the trial court properly advised a defendant of the constitutional rights "is not limited solely to the information provided to the defendant by the trial court.  We examine the totality of the circumstances surrounding the plea.  'A defendant may learn of information not relayed to him by the trial court from other sources, such as his attorney'"); *State v. Diaz* (June 2, 1993), Lorain App. No. 92CA5499.

{¶18} In *State v. Saaty* (Mar. 4, 1997), Franklin App. No. 96APA06-777, the court applied this principle and concluded that although a defense counsel's representation that counsel advised the defendant of his rights may constitute additional evidence that the court explained the right in a manner reasonably intelligible to the defendant, it cannot substitute for the court's

compliance with the rule when the court utterly fails to mention one of the constitutional rights. The court stated:

> "* * * [W]hile defense counsel advised the trial court he read aloud the plea forms to defendant and in his opinion defendant understood them, counsel's actions cannot excuse the trial court's failure to specifically inform defendant he was waiving his right to a jury trial. In response to questioning from the trial court, defense counsel in *Ballard* stated he had explained to defendant his constitutional rights, and he believed defendant understood them. The *Ballard* court considered defense counsel's representations as additional proof that the trial court had meaningfully informed defendant of his right to a jury trial, stating, '[a]lthough the trial court may not relieve itself of the requirement of Crim.R. 11(C) by exacting comments or answers by defense counsel as to the defendant's knowledge of his rights, such a colloquy may be looked to in the totality of the matter.' *Ballard, supra,* at 481.
>
> Thus, where the trial court makes only an indirect or 'glancing' reference to a constitutional right, a defense counsel's representation that he informed a defendant of his constitutional rights can be 'looked to in the totality of the matter' in determining whether the trial court explained or referred to a constitutional right in a manner reasonably intelligible to that defendant. However, where the trial court has completely omitted mentioning a right specified in *Boykin* and *Ballard,* defendant's counsel's representation is not sufficient; defendant's plea is invalid and must be vacated. See [*State v.]* *Sturm*[ (1981), 66 Ohio St.2d 483, 422 N.E.2d 853]. Here, the trial court did not refer to the right to a jury trial in any manner. As *Ballard* dictates, the trial court's exacting comments or answers from defendant's attorney did not relieve it from the mandate of Crim.R. 11(C). *Id.*"

{¶19} With the foregoing principles in mind, we turn to appellant's specific argument—that the trial court failed to adequately advise him of his constitutional right to compulsory process. We recently considered the

adequacy of a trial court's explanation of the defendant's right to compulsory process in *State v. McDaniel*, Vinton App. No. 09CA677, 2010-Ohio-5215.  In *McDaniel*, the trial court explained the defendant's right to compulsory process as follows: "you're waiving your right to bring in your own witnesses to subpoena those witnesses if necessary, to come in as a part of your defense.  Do you understand you are waiving that right?"  Id. at ¶16.  The defendant asserted that the trial court's explanation "did not sufficiently inform him that he could compel witnesses to testify."  Id. at ¶17.  We disagreed.  We observed that other Ohio courts have found similar statements sufficient to explain a defendant's right to compulsory process.  Id., citing *State v. Ward,* Montgomery App. No. 21044, 2006-Ohio-832, at ¶12 (court's statement that the defendant was giving up his right to have his own witnesses come and testify was "adequate, if less than ideal" when informing him of compulsory process right); *State v. Anderson* (1995), 108 Ohio App.3d 5, 11-12, 669 N.E.2d 865 (finding that "[y]ou are giving up your right to call witnesses on your own behalf" informed the defendant of compulsory process right in a reasonably intelligible manner); *State v. Thomas,* Franklin App. No. 04AP-866, 2005-Ohio-2389, at ¶9 (finding that "right to have your witnesses, should you have any, subpoenaed to the

courtroom" informed the defendant of compulsory process right in a reasonably intelligible manner).

{¶20} We further observed that some Ohio courts "have required the trial court to specifically inform the defendant of the power to compel the attendance of witnesses." Id. at ¶18, citing *State v. Gardner,* Lorain App. No. 08CA009520, 2009-Ohio-6505, at ¶9 (court failed to reasonably apprise defendant of compulsory process right because it did not inform him that he could use the court's subpoena power to compel witnesses' attendance); *State v. Parks,* Cuyahoga App. No. 86312, 2006-Ohio-1352, at ¶17 (stating that trial court "clearly informed" defendant of compulsory process right by stating that defendant had a right to subpoena witnesses); *State v. Wilson,* Cuyahoga App. No. 82770, 2004-Ohio-499, at ¶16 ("The trial court must inform a defendant that it has the power to force, compel, subpoena, or otherwise cause a witness to appear and testify on the defendant's behalf. Otherwise, the logical import of the court's notice is that the *defendant could present such witnesses as he could only secure through his own efforts.")* (emphasis sic); see, also, *State v. Rosenberg*, Cuyahoga App. No. 84457, 2005-Ohio-101, at ¶14 (stating that "strict compliance with Crim.R. 11(C) requires the trial court to inform the defendant that witnesses could be 'forced,' 'subpoenaed,' 'compelled,' 'summoned,' or 'required' to appear"

and that "[m]erely advising a defendant that he has 'the right to bring in witnesses to this courtroom to testify for your defense' is insufficient to apprise a defendant of this constitutional right to compulsory process"); *State v. Cummings*, Cuyahoga App. No. 83759, 2004-Ohio-4470 (holding that informing defendant he had a right to "call witnesses" did not sufficiently advise him of compulsory process right).

{¶21} We declined to specifically adopt either view, but instead, determined that "even under the more restrictive cases, the trial court's statement is satisfactory because the statement indicates that [the defendant] could have had the court issue subpoenas to ensure the presence of witnesses. The gist of the trial court's statement was that [the defendant] had the right to subpoena witnesses to testify at any potential trial. We find that this would reasonably apprise an individual of the nature of his constitutional right to compulsory process." Id. at ¶19.

{¶22} In the case at bar, the trial court's statement adequately advised appellant of his right to compulsory process by using the literal language of the rule and by explaining the term in reasonably intelligible terms. The trial court explained to appellant that he has "the right to a compulsory process. That means you have the right to have subpoena's [sic] issued for any witness that you want to appear on your behalf in court." The trial court's

statement that appellant has "the right to a compulsory process" mirrors the language used in Crim.R. 11(C)(2)(c) and as such, constitutes literal, and hence strict, compliance with the rule. See *State v. Senich*, Cuyahoga App. No. 82581, 2003-Ohio-5082, at ¶31, citing *State v. Strawther* (1978), 56 Ohio St.2d 298, 383 N.E.2d 900 (stating that use of term "compulsory process" sufficient to explain the right). We therefore reject appellant's assertion that the trial court did not strictly comply with Crim.R. 11(C)(2)(c).

{¶23} Not only did the court literally comply with the rule, it went a step further and explained the compulsory process right in terms that were at least reasonably intelligible to appellant. While slight nuances exist between the trial court's statement in the case at bar and the trial court's statement in *McDaniel*, both statements advised that pleading guilty waives the right to have subpoenas issued. We agree with those cases holding that a trial court's statement to the effect that a guilty plea waives the right to subpoena witnesses sufficiently advises a defendant in a reasonably intelligible manner of his compulsory process right. See *State v. Moulton*, Cuyahoga App. No. 93726, 2010-Ohio-4484, at ¶12 (concluding that trial court "clearly informed" defendant of compulsory process right by stating that defendant had a right to "subpoena and call witnesses"); *State v. Thomas*, Franklin

App. No. 04AP-866, 2005-Ohio-2389, at ¶9 (finding trial court's statement that defendant had the "right to have your witnesses, should you have any, subpoenaed to the courtroom" sufficient explained compulsory process right); *State v. Moorefield* (Oct. 8, 1999), Champaign App. No. 99CA4 (stating that trial court's explanation that defendant's plea would waive his "right to make witnesses attend and testify" explained compulsory process right "in a functional sense" so as to be "fully sufficient to make [it] reasonably intelligible" to defendant); *State v. Lelux* (Mar. 4, 1997), Franklin App. No. 96APA08-1018 (noting that term "subpoena" is so frequently used that its meaning is commonly known and understood by laypeople and holding that trial court's explanation of compulsory process right as "the right to subpoena witnesses for the trial" reasonably informed defendant of his constitutional right).

{¶24} Moreover, when the court asked appellant whether he understood that pleading guilty waives his right to compulsory process, i.e., the right to have subpoenas issued, appellant stated that he did. Although determining what a defendant subjectively understands is not an exact science, "if the defendant receives the proper information, then [a court] can ordinarily assume that [the defendant] understands that information." *State v. Carter* (1979), 60 Ohio St.2d 34, 38, 396 N.E.2d 757. We already

determined that the trial court relayed accurate information.  The court both literally complied with the rule and further explained the phrase "compulsory process" in a reasonably intelligible manner.  Thus, we may assume that appellant understood that information.  Nothing in the record affirmatively suggests that he did not understand.  At no point during the plea hearing did he indicate, in any manner, any sort of confusion over the meaning of any of the court's statements or the rights he waived by pleading guilty.  Rather, every time the court asked him if he understood, appellant indicated that he did.  Had appellant not understood what the court meant by use of the terms "compulsory process" and "subpoena," he should have so advised the court when asked.

{¶25} As additional evidence that the trial court adequately advised appellant of his compulsory process right, we point out that appellant stated that he had reviewed the plea petition with his attorneys.  See *Ballard* (approving the idea that a court may look to defense counsel's representations as additional evidence that defendant understood Crim.R. 11(C)(2)(c) rights). The plea petition recited that appellant understood that he has the constitutional right "to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses in my favor."  This is the precise language that appellant asserts

the court should have used during the plea hearing to explain his compulsory process right. We do not believe that the trial court was required to repeat this exact phraseology at the plea hearing. Rather, the trial court used the exact language set forth in Crim.R. 11(C) and informed appellant of his subpoena right. Both statements sufficiently advised him of his compulsory process right. The plea petition further defines that right, but there is no requirement that the court use that definition during the plea hearing. Instead, the plea petition may be used as additional evidence that the defendant understood what the court meant by the terms "compulsory process" and "subpoena." See *Ballard*, supra.

{¶26} To the extent appellant argues that the trial court possessed some heightened duty to further define the concept of compulsory process, a term not commonly understood by a layperson,[3] we note that at least one other court has rejected this exact argument. See *State v. Mundy* (Oct. 18, 1996), Greene App. No. 96CA1. In *Mundy*, the defendant asserted that he could not have entered his plea in a knowing and voluntary manner because the phrase "compulsory process" is not known to the average layperson. In

---

[3] As a general proposition, we do not disagree with appellant's suggestion that a trial court should consider defining legal terms of art that may be unknown to a layperson or a person with mental retardation. However, the Ohio Supreme Court has never stated that when the court strictly and literally complies with the rule, it must also define the constitutional terms used in Crim.R. 11(C)(2)(c). Moreover, we are unwilling to inject such a requirement into what is already an apparently much-litigated area of the law. Rather, once a trial court explains the constitutional rights, either strictly or in terms reasonably intelligible

rejecting the defendant's argument, the court first observed that the trial court used the language of Crim.R. 11(C) when advising the defendant of the rights he waived by pleading guilty. The court then observed that although "the trial court might have gone beyond the language of Rule 11 in explaining the right of compulsory process for obtaining favorable witnesses, it was not required to do so and, from our review of the record, there is nothing to suggest that [the defendant] did not mean what he said when he responded affirmatively to the court's question as to whether he understood he was giving up his right to compulsory process for obtaining favorable witnesses." The court additionally noted that the defendant signed a petition to enter a guilty plea in the presence of his attorney and that in the petition, the defendant "acknowledged that he had a right, if he stood upon his plea of not guilty and went to trial, 'to compulsory process for obtaining witnesses in my favor.'"

{¶27} The case at bar is quite similar to *Mundy*. In both cases, the courts used the language set forth in Crim.R. 11(C). In both cases, the courts asked whether the defendant (in *Mundy*) and appellant (in the case sub judice) understood the compulsory process right and both parties indicated that they did. In neither case did either party indicate a failure to

---

to the defendant, it possesses no further duty to define those rights, unless the defendant expresses confusion or misunderstanding.

understand this right.  Furthermore, in both cases, the plea petitions recited and explained the compulsory process right and both parties acknowledged that they understood that right.  Under these circumstances, we can only conclude that appellant meant what he said.  There is nothing in the record to suggest that appellant, despite his mental retardation, did not understand his right to compulsory process.

{¶28} Moreover, to the extent appellant's argument might be construed as asserting that he was not competent to enter a guilty plea,[4] we disagree.  Without question, the conviction of a defendant who is not competent to enter a plea violates due process of law.  See *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, at ¶155, citing *Drope v. Missouri* (1975), 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103, and *State v. Berry* (1995), 72 Ohio St.3d 354, 359, 650 N.E.2d 433.  However, in the absence of evidence to the contrary, a criminal defendant is rebuttably presumed competent to enter a guilty plea.  See R.C. 2945.37(G); *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, at ¶45.  A finding of incompetency is not automatic simply because a defendant is labeled mentally retarded.  See Id. at ¶48, quoting *Atkins v. Virginia* (2002),

---

[4] Appellant argues, in not so many words, that his mental retardation rendered him unable to understand the terms "compulsory process" and "subpoena."  An assertion that a defendant lacks the ability to understand the proceedings, or a concept, is an assertion that the defendant is not competent.  See *Godinez*, infra, 509 U.S. 401 fn.12 ("The focus of a competency inquiry is the defendant's mental capacity; the question is

536 U.S. 304, 318, 122 S.Ct. 2242, 153 L.Ed.2d 335 (stating that "'[m]entally retarded persons frequently * * * are competent to stand trial'"); *State v. Hall* (Feb. 25, 2000) Jackson App. No. 99CA847, citing *State v. Barnhart* (Sept. 24, 1997), Washington App. No. 96CA32. Rather, a court will presume that the defendant is competent, unless the defendant shows that the defendant is unable to understand the proceedings or to assist in the defense. *Were* at ¶45. "The test for determining whether a defendant is competent to stand trial [or to plead guilty] is '"'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him.'"'" Id., quoting *State v. Berry* (1995), 72 Ohio St.3d 354, 359, 650 N.E.2d 433, quoting *Dusky v. United States* (1960), 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824; see, also, *Godinez v. Moran* (1993), 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321. A trial court possesses no need to sua sponte inquire into a defendant's competency unless the record contains "'sufficient indicia of incompetence,' such that an inquiry * * * is necessary to ensure the defendant's right to a fair trial." *Berry*, 72 Ohio St.3d at 359, quoting *Drope*, 420 U.S. at 175; see,

---

whether he has the *ability* to understand the proceedings") (emphasis sic). Thus, one might state that to be presumed competent is to be presumed competent to understand the Crim.R. 11(C) rights.

also, *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, at ¶65.

{¶29} In the case at bar, we believe that the record demonstrates that appellant was competent to plead guilty and that the record does not contain sufficient indicia of incompetence to have required the court to ascertain, sua sponte, appellant's competency. Throughout the plea proceedings, appellant clearly answered all of the court's questions and indicated his understanding of all the information that the court relayed. When the court asked appellant whether he suffered from any mental disability, appellant responded that he did not. Although the record contains evidence that appellant has been identified as mentally retarded since he was a young child, mental retardation alone does not constitute a sufficient indicia of incompetency to require a trial court to sua sponte conduct a competency inquiry.[5] See *State v. Beck*, Hamilton App. Nos. C-020432, C-020449, and C-030062, 2003-Ohio-5838, at ¶12 (citations omitted). As the United States Supreme Court has recognized, a mentally retarded individual may be competent to enter a guilty plea. See *Atkins*, supra; see, also, *Were* at ¶48. The Court has

---

[5] Given the nature of the charges, it may have been preferable for the trial court in the case sub judice to hold a competency hearing. However, a competency hearing was not constitutionally required. See *State v. Bock* (1986), 28 Ohio St.3d 108, 109, 502 N.E.2d 1016 (stating that "the right to a hearing on the issue of incompetency rises to constitutional proportions only when the record contains sufficient indicia of incompetency * * * such that a formal inquiry into defendant's competency is necessary to protect his right to a fair trial"). It is not reversible error for a trial court to fail to hold a competency hearing when the issue is not raised prior to trial and when the record fails to show sufficient indicia of incompetency. See *State v.*

identified no presumption that a mentally retarded individual is presumed incompetent. In fact, the proper procedure is that all criminal defendants are presumed competent and the burden rests with the defendant to prove incompetency. See R.C. 2945.37(G); *Were* at ¶45.

{¶30} We reiterate that in the case at bar, nothing in the record raises sufficient indicia of incompetency to suggest that appellant was not competent to enter a guilty plea. As such, appellant was competent to understand the plea proceeding, including his right to compulsory process, and to speak up if he did not. If appellant did not understand what the court meant by the words "compulsory process" and "subpoena," he should have said so. Instead, he affirmatively indicated that he understood. Unless a defendant indicates in some way that he is confused or does not understand the meaning of "compulsory process" or "subpoena," we do not believe that a trial court possesses an independent duty to engage in a lengthy dissertation of the meaning of the court's subpoena power and the constitutional right to compulsory process—even when the defendant is mentally retarded. Furthermore, appellant informed the court that he did not suffer from any mental disability, that he understood everything the court stated, and that he had reviewed the plea petition with his attorneys.

---

*Eley* (1996), 77 Ohio St.3d 174, 183-184, 672 N.E.2d 640; *Bock* at paragraph one of the syllabus; *State v. Borchers* (1995), 101 Ohio App.3d 157, 159, 655 N.E.2d 225; see, also, *Hall*, supra.

**{¶31}** We find the case at bar similar to *State v. Bennett* (July 18, 1991), Montgomery App. No. 12208. In *Bennett*, the defendant asserted that he did not understand the effect of his plea when he could not "adequately read or write" and when "his mental capacity is quite diminished, even to the point of having been labeled 'mentally retarded' while in school." The court rejected the defendant's argument, explaining that the defendant "failed to point out how these matters, if true, impaired his ability to understand the effect of his plea. A criminal defendant may very well understand the effect of his plea, after proper explanation, even though he is subject to those limitations." The court further observed that the trial court asked the defendant "several times" whether he understood, and each time, appellant responded that he did.

**{¶32}** Similarly, in the case sub judice, the record does not support any finding that appellant's status as a mentally retarded individual precluded him from understanding the consequences of his guilty plea, including that he would waive his right to compulsory process. We emphasize, again, that appellant never gave any indication that he failed to comprehend the proceedings or what the court meant by the terms "compulsory process" and "subpoena." Had he done so, then the trial court should have inquired further and possibly further explained the concepts. In

the absence of some confusion on appellant's part, the trial court possessed

no independent duty to further define those terms.

{¶33} Furthermore, allowing a defendant to state in open court that he

understood a Crim.R. 11(C) right, but then argue on appeal that he did not,

would contravene the general principle that guilty pleas should be final.  See

*Ballard*, 66 Ohio St.2d at 479 (stating that in accepting a guilty plea, a court

must protect "the interest of finality").  As the United States Supreme Court

explained in *United States v. Timmreck* (1979), 441 U.S. 780, 784, 99 S.Ct.

2085, 60 L.Ed.2d 634:

> "'Every inroad on the concept of finality undermines
> confidence in the integrity of our procedures; and, by increasing
> the volume of judicial work, inevitably delays and impairs the
> orderly administration of justice.  The impact is greatest when
> new grounds for setting aside guilty pleas are approved because
> the vast majority of criminal convictions result from such pleas.
> Moreover, the concern that unfair procedures may have resulted
> in the conviction of an innocent defendant is only rarely raised
> by a petition to set aside a guilty plea.'"

Id., quoting *United States v. Smith* (C.A.7, 1971), 440 F.2d 521, 528-529

(Stevens, J., dissenting); see, also, *Hill v. Lockhart* (1985), 474 U.S. 52, 58,

106 S.Ct. 366, 88 L.Ed.2d 203.  Because "[a] plea of guilty is a complete

admission of guilt," *State v. Stumpf* (1987)*,* 32 Ohio St.3d 95, 104, 512

N.E.2d 598, "absent some assertion that a conviction is inherently erroneous,

courts should be reluctant to disturb the finality of convictions based on

guilty pleas." *State v. Graves* (July 7, 1993), Medina App. No. 2203. In the case at bar, there is nothing so inherently erroneous regarding appellant's guilty plea that we should tip the scales of justice in order to invalidate appellant's plea.

{¶34} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

IV.

ALLIED OFFENSES OF SIMILAR IMPORT

{¶35} In his second assignment of error, appellant argues that the trial court erred by convicting him of aggravated arson and tampering with evidence when those two offenses constitute allied offenses of similar import. He contends that the commission of aggravated arson necessarily results in commission of tampering with evidence.

A.

WAIVER ISSUES

{¶36} Before considering the merits of appellant's assignments of error, we address the state's arguments that (1) appellant waived any alleged error by failing to object at the sentencing hearing, and (2) he cannot appeal the sentence because he received the sentence for which he negotiated. We reject both of the state's arguments.

1.

PLAIN ERROR

**{¶37}** When a defendant fails to object to the imposition of multiple

sentences for allied offenses of similar import, we may recognize the error if

it constitutes plain error.  It is well settled that we may notice plain errors or

defects affecting substantial rights, despite an appellant's failure to bring

them to the attention of the trial court.  Crim.R. 52(B).  Plain error exists

when the error is plain or obvious and when the error "affect[s] 'substantial

rights.'"  The error affects substantial rights when "'but for the error, the

outcome of the trial [proceeding] clearly would have been otherwise.'"

*State v. Litreal*, 170 Ohio App.3d 670, 2006-Ohio-5416, 868 N.E.2d 1018,

at ¶11, quoting *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d

1240.  We take notice of plain error with the utmost of caution, under

exceptional circumstances, and only to prevent a manifest miscarriage of

justice.  *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d

995, at ¶78; *State v. Patterson*, Washington App. No. 05CA16, 2006-Ohio-

1902, at ¶14.  A reviewing court should consider noticing plain error only if

the error "'"seriously affect[s] the fairness, integrity or public reputation of

judicial proceedings."'" *Barnes*, 94 Ohio St.3d at 27, quoting *United States*

*v. Olano* (1993), 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508,

quoting in turn *United States v. Atkinson* (1936), 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555. We have previously recognized that plain error exists when a defendant is convicted of multiple offenses that constitute allied offenses of similar import. See *State v. Shaw*, Scioto App. No. 07CA3190, 2008-Ohio-5910, at ¶16. In the case at bar, we do not believe that plain error exists.

2.

## EFFECT OF NEGOTIATED SENTENCE ON APPEALABILITY OF ALLIED OFFENSE ISSUE

{¶38} A criminal defendant has the right to appeal the issue of allied offenses under R.C. 2941.25, even if the defendant entered into a plea bargain and even if the sentence was an agreed sentence under R .C. 2953.08(D). *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, paragraph one of the syllabus. *Underwood* further held that a trial court is prohibited from imposing individual sentences for "counts that constitute allied offenses of similar import." *Underwood* at ¶26.

{¶39} Based upon the clear holding of *Underwood*, we reject the state's argument that appellant is prohibited from appealing the multiple sentences for allied offenses when the sentence resulted from a plea negotiation.

B.

ALLIED OFFENSE ANALYSIS

**{¶40}** R.C. 2941.25 sets forth the statutory analysis for determining

whether offenses constitute allied offenses of similar import:

> (A) Where the same conduct by defendant can be
> construed to constitute two or more allied offenses of similar
> import, the indictment or information may contain counts for all
> offenses, but the defendant may be convicted of only one.
> (B) Where the defendant's conduct constitutes two or
> more offenses of dissimilar import, or where his conduct results
> in two or more offenses of the same or similar kind committed
> separately or with a separate animus as to each, the indictment
> or information may contain counts for all such offenses, and the
> defendant may be convicted of all of them.

**{¶41}** The Supreme Court of Ohio has interpreted R.C. 2941.25 to

involve a two-step analysis:

> "'In the first step, the elements of the two crimes are
> compared. If the elements of the offenses correspond to such a
> degree that the commission of one crime will result in the
> commission of the other, the crimes are allied offenses of
> similar import and the court must proceed to the second step.
> In the second step, the defendant's conduct is reviewed to
> determine whether the defendant can be convicted of both
> offenses. If the court finds either that the crimes were
> committed separately or that there was a separate animus for
> each crime, the defendant may be convicted of both offenses.'"

*State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, 911 N.E.2d 882, at

¶10, quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526

N.E.2d 816; see, also, *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059,

905 N.E.2d 154; *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886

N.E.2d 181, at ¶14.

{¶42} To determine whether offenses are allied offenses of similar

import under R.C. 2941.25(A), courts must "compare the elements of

offenses in the abstract, i.e., without considering the evidence in the case."

*Cabrales* at ¶27; see, also, *Harris* at ¶12.  The elements need not, however,

be identical for the offenses to constitute allied offenses of similar import.

*Winn* at ¶12.  The key word is "similar," not "identical."  *Winn* at ¶12; see,

also, *Harris* at ¶16 (stating that the offenses need not exactly align to

constitute allied offenses).  Offenses constitute allied offenses of similar

import if, "'in comparing the elements of the offenses in the abstract, the

offenses are so similar that the commission of one offense will necessarily

result in commission of the other.'"[6] *Winn* at ¶12, quoting *Cabrales* at ¶26.

---

[6] We point out what appears to us to be somewhat of an anomaly in some of the Supreme Court of Ohio's explanation of the allied offense analysis.  On at least two occasions, the Court has stated that it applies the "same analysis to determine whether two aggravating circumstances merge as it utilizes to decide whether two offenses are allied offenses of the same import." *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, at ¶51; see, also, *State v. Jenkins* (1984), 15 Ohio St.3d 164, 197, 473 N.E.2d 264, fn.27 (stating that in concluding that death penalty specifications should have merged, court was "guided by principles espoused in considering the doctrine of merger under R.C. 2941.25").  The court has stated that in determining whether death penalty specifications should merge, the inquiry is "whether the specifications at issue 'ar[o]se from the same act or indivisible course of conduct,' and were thus, in fact, duplicative." *State v. Garner* (1995), 74 Ohio St.3d 49, 53, 656 N.E.2d 623.  Whether two offenses "arose from an indivisible course of conduct" seems to us to be an entirely different question than whether a comparison of the elements in the abstract leads to a conclusion that the commission of one offense necessarily results in the other.  Thus, we are confused by the court's statement in *Franklin* that the two tests are one and the same.  We choose, therefore, to follow the Supreme Court of Ohio's more recent pronouncements regarding R.C. 2941.25 and to apply the more recently-outlined analysis.  Perhaps a more accurate statement would be that the two analyses are similar in respect to the application of the second part of the allied offense test, i.e., whether the offenses were committed with a separate animus.

{¶43} As the foregoing analysis directs, we being by comparing the elements of the two offenses in the case at bar, aggravated arson and tampering with evidence, in the abstract.

{¶44} The aggravated arson statute, R.C. 2909.02, provides:

> (A) No person, by means of fire or explosion, shall knowingly do any of the following:
> (1) Create a substantial risk of serious physical harm to any person other than the offender;
> (2) Cause physical harm to any occupied structure;
> * * * *

The tampering with evidence statute, R.C. 2921.12, provides:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation

{¶45} When we compare the elements of these two offenses in the abstract, we do not find that they correspond to such a degree that commission of the one necessarily results in the commission of the other. The elements we must compare are (1) fire or explosion, (2) knowingly, (3) (a) create substantial risk of serious physical harm, or (b) cause physical harm to occupied structure (aggravated arson); and (1) knowing, (2) official proceeding or investigation, (3) alter, destroy, conceal, remove, (4) purpose to impair, (5) value or availability as evidence (tampering with evidence). One can commit the offense of tampering with evidence without necessarily

committing aggravated arson. Tampering with evidence does not require a fire or explosion. Furthermore, one can commit the offense of aggravated arson without necessarily tampering with evidence. One can knowingly create a substantial risk of serious physical harm or cause physical harm to an occupied structure by means of fire or explosion without necessarily altering, destroying, concealing, or removing with the purpose to impair the value of an item or its availability as evidence. An aggravated arson does not necessarily result in the commission of tampering with evidence. Cf. *State v. Kelly*, Franklin App. No. 02AP-195, 2002-Ohio-5797, at ¶32 (concluding that aggravated arson and felonious assault do not constitute allied offenses because "felonious assault need not be committed by fire or explosion" and "aggravated arson necessarily is committed with fire or an explosive and does not [necessarily] require that the offender cause or attempt to cause harm to any person"); *State v. Brown,* Montgomery App. No. 18643, 2002-Ohio-277 (holding that felony murder and aggravated arson were not allied offenses even though aggravated arson caused the victim's death, because "[a]ggravated arson can be committed without a killing, and felony murder can be committed by means of a first or second degree felony other than [by fire or explosion]").

**{¶46}** Appellant nevertheless asserts that we should follow the court's analysis in *State v. Moore* (Oct. 21, 1987), Hamilton App. No. C-860814, and conclude that aggravated arson and tampering with evidence constitute allied offenses of similar import.  We do not find *Moore* directly apposite and decline to follow it.

**{¶47}** In *Moore*, the court determined that arson (not aggravated) and tampering with evidence constitute allied offenses.  The court found that the commission of arson will result in the commission of tampering with evidence.  At the time *Moore* was decided, the arson statute, R.C. 2909.03 stated: "(A) No person, by means of fire or explosion, shall knowingly:  (1) Cause, or create a substantial risk of, physical harm to any property of another without his consent."  The tampering with evidence statute stated: "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or is likely to be instituted, shall do any of the following:  (1) Alter, destroy, conceal or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."  The court stated that both statutes require a "knowing" state of mind and prohibit the destruction of property.  The court determined that "[t]he use of fire to destroy potential evidence will result in the commission of both arson and tampering."

**{¶48}** In the case at bar, the aggravated arson statute reads differently than the arson statute considered in *Moore*. The aggravated arson statute, unlike the arson statute in *Moore*, does not involve physical harm to "any property," but rather, it involves either (1) a substantial risk of serious physical harm to any person other than the offender, or (2) physical harm to any occupied structure. Thus, the aggravated arson statute is more specific than the arson statute and requires more than just damage to "any property." Thus, we find *Moore* distinguishable and, therefore, decline to follow it.

**{¶49}** Because we determined that the commission of aggravated arson does not necessarily result in the commission of tampering with evidence, or vice versa, we have no need to consider whether appellant committed the offenses separately or with the same animus.

**{¶50}** Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

Kline, J., concurring.

**{¶51}** I concur in judgment and opinion. I write separately to explain how I distinguish *State v. Moore* (Oct. 21, 1987), Hamilton App. No. C-860814, which the appellant relies on in his argument that the offenses of

aggravated arson and tampering with evidence constitute allied offenses of similar import. See Second Assignment of Error.

{¶52} *Moore* relies on the assumption that arson involves an attempt to destroy property with fire or explosion. And since arson involves an attempt to destroy property, it is an allied offense to tampering because tampering also prohibits the destruction of property where the malefactor knows that the property is likely to be evidence in an official investigation. Id. at ¶46-49.

{¶53} In my view, the *Moore* analysis fails because the use of fire or explosion does not destroy evidence related to arson. That is, even if the property is entirely consumed, the resulting ashes are, in fact, evidence of arson. The fire may or may not consume evidence of another crime or other evidence related to arson but the fire does not necessarily destroy evidence of arson because the use of fire is an element of arson. Therefore, an offender may commit the crime of aggravated arson without necessarily committing the crime of tampering with evidence. It is, of course, easy to see that an individual may tamper with evidence without committing arson. Therefore these offenses "are not allied offenses because the commission of one will not automatically result in commission of the other." *State v. Rance*, 85 Ohio St.3d 632, 639, 1999-Ohio-291, citing *State v. Preston*

(1986), 23 Ohio St.3d 64, 65.  Accordingly, for the above reason, I also reject *Moore* and agree that the offenses of aggravated arson and tampering with evidence do not constitute allied offenses of similar import.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J.: Concurs in Judgment and Opinion.
Kline, J.: Concurs in Judgment and Opinion with Opinion.

For the Court,

BY:  _____
Matthew W. McFarland
Presiding Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**