[Cite as *State v. Quigley*, 2024-Ohio-252.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,             :

                                No. 112783

    v.                              :

SEAN QUIGLEY,                           :

    Defendant-Appellant.            :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 25, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-677371-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Carla Neuhauser, Assistant Prosecuting
Attorney, *for appellee.*

Edward M. Heindel, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, Sean Quigley, appeals from his judgment of conviction that was issued after his guilty plea to several crimes. Quigley challenges the validity of his plea, the trial court's restitution order, and whether the trial court

afforded him full and fair allocution at sentencing. After a review of the facts and pertinent law, we affirm the trial court's judgment.

{¶ 2} On January 11, 2023, Quigley was charged in a six-count indictment for crimes that he was alleged to have committed on January 2, 2023. Count 1 charged burglary; Counts 2 and 3 charged robbery of a gas station; Count 4 charged criminal damaging or endangering of a laundromat; Count 5 charged burglary of a convenience store; and Count 6 charged aggravated menacing.

{¶ 3} After negotiations with the state, Quigley pleaded guilty to Counts 1 (as amended from a felony of the second degree to a felony of the third degree), 3, 4, and 5. Counts 2 and 6 were dismissed.

{¶ 4} At the sentencing hearing, the assistant prosecuting attorney, without objection from the defense, recited the facts giving rise to the indictment and plea. Quigley's crimes on the day in question began at a gas station, where Quigley took a bottle of soda from the station's mart without paying for it. The owner's adult son asked Quigley to pay, which prompted Quigley to hit him in the face with a closed fist multiple times. The altercation ended when the owner intervened.

{¶ 5} After that incident, Quigley walked up the street to a laundromat, where he went in and started banging on the machines. He took various items from behind the employee station and dumped them on the floor, creating a mess.

{¶ 6} Quigley left the laundromat, went to a private residence, and entered the home through its rear patio door. The homeowner was present and initially thought it was her son, who is similar in age and build to Quigley. However, the

homeowner soon realized the person who had entered her home was a complete stranger. The homeowner asked Quigley to leave, but he resisted, suggesting he wanted to talk. The homeowner retrieved a firearm and aimed it at Quigley, while directing him to leave. Quigley eventually went outside, where he lingered until the homeowner went outside, armed with her weapon. The homeowner testified that she was without a phone and had to go to her mother's house for access to a phone to call the police. She had to break her mother's door to get inside. The homeowner further stated that the door through which Quigley entered her own home was damaged as a result of his break-in.

{¶ 7} After the home invasion, Quigley went to a convenience store where, according to an employee, he walked around and was apparently agitated. Because of his state, the employee asked Quigley to leave. Quigley ignored the employee's request and, instead, attempted to get behind the plexiglass divider that separates employees from customers. The employee was able to push Quigley out of that area and lock herself in an area beyond the separately secured plexiglass. Quigley profanely told the employee "I'll get in," and kicked the plexiglass. Quigley then walked around the store and back to a wooden door that separates the employee-only area and stock area from the main store. He kicked that door until it broke the hinges and entered the employee-only section of the store. The police arrived and were eventually able to subdue Quigley.

{¶ 8} The homeowner victim was present at sentencing, and the trial court questioned her about the cost to repair her door and replace her mother's door. The

homeowner responded that she believed her door would be approximately $800 to repair and her mother's door would be approximately $200 to replace.

{¶ 9} Defense counsel spoke on Quigley's behalf, expressing Quigley's remorse and offering potential mitigation for his crimes. Quigley was afforded an opportunity to address the court. At the start of his allocution, Quigley informed the court that he had a PowerPoint presentation for the court; defense counsel stated that he was unaware of the PowerPoint. The trial court told Quigley to "just talk," which he did at length. *See* tr. 36-42.

{¶ 10} The state sought restitution from Quigley in the amount of $3,000. Defense counsel reminded the court that Quigley was indigent and would not be able to pay the requested $3,000. The assistant prosecuting attorney informed the court that the homeowner stated that $1,000 would be an acceptable amount of restitution for her. Quigley agreed that was a reasonable figure, and the trial court ordered restitution in the amount of $1,000. The trial court sentenced Quigley to an aggregate prison term of four years. Quigley now appeals, raising the following three assignments of error for our review:

I. Quigley's guilty plea was not made knowingly, intelligently and voluntarily because the trial court did not sufficiently inform him of his constitutional rights.

II. The trial court erred in awarding restitution in the amount of $1,000.

III. The trial court erred when it did not provide Quigley his right to allocute fully when it would not allow him to present his PowerPoint presentation at sentencing.

{¶ 11} In his first assignment of error, Quigley contends that his plea was not knowingly, intelligently, and voluntarily made because the trial court did not sufficiently advise him of his constitutional rights. Specifically, Quigley contends that the trial court failed to sufficiently advise him that, by entering a plea, he was waiving the right to subpoena witnesses.

{¶ 12} The ultimate inquiry when reviewing a trial court's acceptance of a guilty plea is whether the defendant entered the plea in a knowing, intelligent, and voluntary manner. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7, citing *State v. Engle*, 74 Ohio St.3d 525, 660 N.E.2d 450 (1996). A defendant enters a plea in a knowing, intelligent, and voluntary manner when the trial court fully advises the defendant of all the constitutional and procedural protections set forth in Crim.R. 11(C) that a guilty plea waives. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25, citing *Engle*. Thus, when an appellate court reviews a trial court's acceptance of a guilty plea, it must independently review the record to ensure that the trial court followed the dictates of Crim.R. 11(C). *State v. Kelley*, 57 Ohio St.3d 127, 128, 566 N.E.2d 658 (1991); *State v. Gilmore*, 8th Dist. Cuyahoga Nos. 92106, 92107, 92108, and 92109, 2009-Ohio-4230, ¶ 12.

{¶ 13} A trial court must strictly comply with the dictates of Crim.R. 11(C)(2) regarding the waiver of constitutional rights. *Veney* at ¶ 18. However, strict compliance with Crim.R. 11(C)(2) does not require a rote recitation of the exact language of the rule; rather, the focus on review is whether the record shows that

the trial court explained these rights in a manner reasonably intelligible to the defendant. *State v. Parks*, 8th Dist. Cuyahoga No. 86312, 2006-Ohio-1352, ¶ 10-13. Notification of the right of compulsory process to obtain witnesses has long been recognized as a constitutional right in Ohio. *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1982), paragraph one of the syllabus.

{¶ 14} Here, in regard to waiver of his right to subpoena witnesses, the trial court asked Quigley, "Do you understand that you have the right to subpoena witnesses to testify in your favor at a trial?" Quigley responded, "Yes." According to Quigley, the advisement was not "meaningful" because "[i]t did [not] end with Quigley fully understanding that he could have the sheriff arrest people who refused to appear and that the court could force them to testify unless they asserted a valid privilege or were deemed incompetent." Appellant's Brief, p. 14. Quigley's contention has been rejected by the Ohio Supreme Court, this court, and other Ohio appellate courts.

{¶ 15} For example, the Ohio Supreme Court has held that a court's advisement that a defendant would be waiving a "right to call witnesses to speak on your behalf" is a reasonably intelligible description. *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 20; *see also State v. Miller*, 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, ¶ 20-21 (finding strict compliance where the trial court advised "your lawyer can issue subpoenas to help you get them [witnesses] here to testify for you"); *Parks* at ¶ 17 (use of word "subpoena" adequately informs defendant of his or her right to compulsory process), and

*State v. Pigge*, 4th Dist. Ross No. 09CA3136, 2010-Ohio-6541, ¶ 22 (statement that guilty plea waives the right to subpoena witnesses sufficiently advises a defendant in a reasonably intelligible manner of his compulsory process right).

{¶ 16} On this record, Quigley's first assignment of error is without merit and hereby overruled.

{¶ 17} For his second assigned error, Quigley contends that the trial court abused its discretion in its restitution order.

{¶ 18} R.C. 2929.18(A)(1) permits a trial court to impose restitution as part of a sentence in order to compensate a victim for economic loss. The statute provides in pertinent part that

> [a]t sentencing, the court shall determine the amount of restitution to be made by the offender. The victim, victim's representative, victim's attorney, if applicable, the prosecutor or the prosecutor's designee, and the offender may provide information relevant to the determination of the amount of restitution.

R.C. 2929.18(A)(1).

{¶ 19} In order for a court to impose restitution, "[t]here must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty." *State v. Estes*, 3d Dist. Seneca No. 13-11-14, 2011-Ohio-5740, ¶ 20. "The evidence to support a restitution order can take the form of either documentary evidence or testimony." *State v. Jones*, 10th Dist. Franklin No. 14AP-80, 2014-Ohio-3740, ¶ 23 (citations omitted). A victim's testimony may itself be sufficient to establish economic loss for the purpose of a trial court's restitution order. *State v. Floyd*, 10th Dist. Franklin

No. 19AP-449, 2020-Ohio-4655, ¶ 18; *State v. Young*, 6th Dist. Lucas No. L-19-1189, 2020-Ohio-4943, ¶ 13. "In calculating a victim's economic loss, '[t]he reliability of the evidence and the credibility of the witnesses is for the trial court, as trier of fact, to determine.'" *Young* at ¶ 28.

{¶ 20} Generally, courts review an order of restitution for an abuse of discretion. *State v. Pollard*, 8th Dist. Cuyahoga No. 97166, 2012-Ohio-1196, ¶ 7. An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 21} Here, Quigley agreed to the $1,000 restitution order. Under the doctrine of invited error, an appellant cannot attack a judgment based on an error the appellant induced the court to commit or for which the appellant is actively responsible. *In re J.B.*, 10th Dist. Franklin No. 11AP-63, 2011-Ohio-3658, ¶ 10, citing *Daimler/Chrysler Truck Fin. v. Kimball*, 2d Dist. Champaign No. 2007-CA-07, 2007-Ohio-6678, ¶ 40. Under this principle, a party may not complain about an action taken by the court in accordance with the party's own suggestion or request. *Id.*; *see also State v. Silbaugh*, 11th Dist. Portage No. 2008-P-0059, 2009-Ohio-1489, ¶ 22 (the defendant's stipulation to the amount of restitution constituted invited error).

{¶ 22} Quigley agreed to the amount of restitution, which was based on the homeowner victim's statement about the damage that was done to her house and

her mother's house as a result of Quigley's crime. On this record, Quigley's second assignment of error is without merit and hereby overruled.

**{¶ 23}** In his final assignment of error, Quigley contends that the trial court did not afford him sufficient allocution because it did not allow him to present his PowerPoint presentation.

**{¶ 24}** Pursuant to Crim.R. 32(A)(1), at the time of imposing sentence, the trial court shall "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." Crim.R. 32(A)(1); *State v. Melendez*, 8th Dist. Cuyahoga No. 106994, 2019-Ohio-533, ¶ 18. The purpose of allocution is "to permit the defendant to speak on his [or her] own behalf or present any information in mitigation of punishment." *State v. Reynolds*, 80 Ohio St.3d 670, 684, 687 N.E.2d 1358 (1998).

**{¶ 25}** Quigley had sufficient opportunity to speak on his own behalf and present possible mitigating information. *See* tr. 36-42. Indeed, Quigley (1) expressed his remorse, (2) described the state he was in at the time of the crimes, (3) described the network he has to help him, and (4) stated his hope for his future. Quigley's counsel (who was unaware of the PowerPoint presentation) also spoke on his behalf and presented potentially mitigating factors. Quigley was afforded fair and full allocution. His third assignment of error is therefore overruled.

**{¶ 26}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MARY EILEEN KILBANE, P.J., and
SEAN C. GALLAGHER, J., CONCUR