[Cite as *State v. Estes*, 2011-Ohio-5740.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                      CASE NO. 13-11-14

    v.

DAVID M. ESTES,                             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 08CR0149

Judgment Affirmed

Date of Decision:   November 7, 2011

APPEARANCES:

    *Jonathan G. Stotzer*  for Appellant

    *Derek W. DeVine and Rhonda L. Best*  for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, David M. Estes ("Estes"), appeals the March 31, 2011 judgment of the Seneca County Court of Common Pleas ordering him to pay: $2,725.00 in restitution to Fifth-Third Bank; $8,388.86 in restitution to GM Credit (aka HSBC Bank Nevada); and $2,093.61 in restitution to Chase Card Member Services.

{¶2} In October of 2007, Rebecca Rishty, Estes' ex-wife, noticed that someone had opened credit cards in her name when she received monthly billing statements for credit accounts that she did not authorize. One of the statements indicated a balance had been accrued of over $10,000.00. At that time, she recently had her mail forwarded to her mother's address. Before then, her mail was sent to the former marital home in Tiffin, Ohio, where Estes was residing. The billing statements of these credit cards indicated that the majority of the purchases were made in the Tiffin area. Based on their history together, Rishty suspected Estes' involvement in the opening of these credit card accounts in her name. Because Rishty was living abroad at the time, she asked her mother to notify law enforcement.

{¶3} Rishty and Estes were divorced in September of 2007. The record indicates that, as part of the divorce agreement, their home in Tiffin would remain in Rishty's name, however, Estes was permitted to live there rent-free for eighteen

months in lieu of Rishty paying him spousal support. Estes moved into their Tiffin home prior to the divorce at the end of April of 2007. Rishty had not lived with Estes since January of 2006 because she worked and lived abroad in South Africa for extended periods of time. When Rishty returned to the country, she lived in Bethesda, Maryland.

{¶4} Lt. Det. Michelle Craig of the Tiffin Police Department received the initial call from Rishty's mother and began investigating the case. Det. Lt. Craig's investigation revealed that in June 2007, while he was living alone in their Tiffin home, Estes used Rishty's personal identifying information, without her consent or approval, to apply for two credit cards in Rishty's name—a GM Flex credit card and a Chase MasterCard. Once the new credit cards were approved, Estes used them to purchase property and services in the amount of $10,763.33 on the GM Flex credit card and $2,378.06 on the Chase MasterCard. Estes initially denied any involvement in fraudulently establishing these credit cards in Rishty's name.

{¶5} However, Lt. Det. Craig obtained surveillance video, depicting Estes making specific purchases documented on the credit card billing statements. In addition, one of the store clerks was able to identify Estes and recalled him making a particular purchase. Pursuant to a properly executed search warrant, Lt. Det. Craig also recovered several items purchased by Estes with the credit cards at issue, receipts and billing statements corresponding to the credit cards, as well as

the actual credit cards fraudulently procured by Estes. These items included two bicycles, a PlayStation 3 video game console and video games, a computer and printer, a digital camera and other photography related items. All of these items were found in the former marital home where Estes continued to reside. Estes eventually admitted to Lt. Det. Craig that he opened the credit card accounts in Rishty's name because he ran out of money and needed basic necessities.

{¶6} Several months later, in January of 2008, Risthy's mother again contacted Lt. Det. Craig advising that Estes was "up to his old tricks." This time, Estes, without Rishty's consent or approval, drafted three courtesy checks connected to an existing line of credit Rishty had with Fifth-Third Bank. Estes named himself as payee, forged Rishty's signature and deposited the proceeds of the checks into his bank account. The record indicates that Estes obtained these checks while living in the former marital home. The checks were drafted in the amounts of $175.00, $2,000.00, and $550.00. Once confronted by law enforcement, Estes admitted to forging these checks, explaining that he ran out of money.

{¶7} On July 16, 2008, the Seneca County Grand Jury indicted Estes on Count One: identity fraud in violation of R.C. 2913.49(B)(1), (I)(2), a third degree felony; Count Two: misuse of credit cards in violation of R.C. 2913.21(B)(2), (D)(3), a fourth degree felony; Count Three: grand theft in violation of R.C.

2913.02(A)(3), (B)(2), a fourth degree felony; and Count Four: forgery in violation of R.C. 2913.31(A)(1), a fifth degree felony.

{¶8} On October 9, 2008, Estes entered pleas of guilty to all four counts in the indictment pursuant to a written plea agreement. The trial court found Estes guilty of the four counts based on his pleas of guilty.

{¶9} On August 13, 2009, and October 1, 2009, the trial court held restitution hearings to determine the amount of restitution Estes owed to the victim.

{¶10} On March 31, 2011, the trial court filed a judgment entry of re-sentencing ordering Estes to pay: $2,725.00 in restitution to Fifth-Third Bank; $8,388.86 in restitution to GM Credit (aka HSBC Bank Nevada); and $2,093.61 in restitution to Chase Card Member Services.[1]

{¶11} Estes now appeals, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED BY ORDERING THE APPELLANT TO PAY RESTITUTION TO BANKS AND CREDIT CARD COMPANIES.**

---

[1] We note that on May 24, 2010 and November 29, 2010, this Court dismissed Estes' appeals based upon jurisdictional grounds that the judgment entries of sentence failed to comply with Crim.R. 32(C).

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN DETERMINING THE AMOUNT OF RESTITUTION TO BE PAID BY THE APPELLANT.**

### *First Assignment of Error*

{¶12} In his first assignment of error, Estes argues that the trial court erred in ordering him to pay restitution to GM Credit, Chase Card Member Services and Fifth-Third Bank. Specifically, Estes contends that Rishty is the only victim in this case because she is the party who suffered economic loss as a result of Estes' conduct. Therefore, Estes maintains that GM Credit, Chase Card Member Services and Fifth-Third Bank are not entitled to restitution because they are not the victims of his crimes.

{¶13} An appellate court reviews a trial court's decision to impose restitution under an abuse of discretion standard. *State v. Rohrbaugh*, 191 Ohio App.3d 117, 944 N.E.2d 1230. An abuse of discretion implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶14} Section 2929.18 of the Revised Code governs restitution and provides, in relevant part:

> **(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an**

> **offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section \* \* \*.  Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:**
>
> **(1)   Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss.**

Initially, we note that on appeal Estes mischaracterizes the nature of the facts in this case as a marital issue that should have been resolved in the divorce.  Estes further labels GM Credit, Chase Card Members Services and Fifth-Third Bank as "tangentially involved institutions."  However, a thorough review of the facts in this case reveals that GM Credit, Chase Card Members Services and Fifth-Third Bank are the victims who directly suffered the economic loss as a result of Estes' wrongdoing, and are not third parties seeking reimbursement for money paid out to an injured party, such as in the case of a typical insurance settlement.

{¶15} With respect to the particular claims of GM Credit and Chase Card Members Services, this is not a case where a soon-to-be ex-husband went on a shopping spree using his wife's credit cards to incur a joint debt.  Rather, the record demonstrates that Estes deceived these credit card companies by purporting to be Rishty and forging her authorization on the applications.  It is solely because of Estes' actions of fraudulently holding himself out to be Rishty that GM Credit and Chase Card Members Services extended lines of credit in Rishty's name,

which Estes used to incur a debt in the amount of $13,141.39. GM Credit and Chase Card Members Services, not Rishty, paid each transaction charged by Estes on those lines of credit. Based upon Estes' admissions and the evidence gathered during the course of the investigation, it is evident that Rishty never legally established a consumer relationship with GM Credit and Chase Card Members Services. Thus, the record demonstrates that Rishty was not a party to the transaction procuring lines of credit from these entities.

{¶16} The record also indicates that both GM Credit and Chase Card Members Services worked with law enforcement during the investigation to recoup their losses as a result of Estes' conduct. Moreover, Chase Card Members Services specifically requested that it be considered the victim and that it receive restitution in the final disposition of the case. Despite Estes' bald assertions, there is no evidence to support his claim that Rishty is the victim who suffered economic loss as a result of his criminal conduct, nor does he cite any authority which would preclude GM Credit and Chase Card Members Services from being entitled to restitution under these facts. Accordingly, we conclude that the trial court did not abuse its discretion when it identified GM Credit and Chase Card Members Services as the victims suffering economic loss as a direct result of Estes' wrongdoing.

{¶17} We also find no error in the trial court's order of restitution to Fifth-Third Bank for the convenience checks Estes's forged on Rishty's existing line of credit with the bank. Again, the evidence in the record demonstrates that Fifth-Third paid these funds to Estes and, therefore, suffered the economic loss as a result of his forgery. Absent any evidence to the contrary, we decline to indulge Estes' argument claiming that Rishty is the victim in this instance, which he again makes with no citation to authority or to the record.

{¶18} In sum, we conclude that the record supports the trial court's determination that GM Credit, Chase Card Members Services and Fifth-Third Bank are the victims who suffered economic loss as a direct result of Estes' criminal conduct. Accordingly, we find that the trial court did not abuse its discretion in concluding that GM Credit, Chase Card Members Services and Fifth-Third Bank are entitled to restitution. Estes' first assignment of error is overruled.

*The Second Assignment of Error*

{¶19} In his second assignment of error, Estes claims that the trial court erred in determining the amount of restitution to be paid. Specifically, Estes challenges the adequacy of the evidence presented by the prosecution, which the trial court relied on to determine the amount of restitution ordered.

{¶20} "In an order of restitution, the amount of restitution must bear a reasonable relationship to the loss suffered." *State v. Marbury* (1995), 104 Ohio

App.3d 179, 181, 661 N.E.2d 271; see, also, R.C. 2929.18(A)(1). Thus, it is held that restitution is limited to the actual loss caused by the defendant's criminal conduct for which he was convicted. *State v. Brumback* (1996), 109 Ohio App.3d 65, 82, 671 N.E.2d 1064. There must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty. In addition, the trial court "may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information." R.C. 2929.18(A)(1).

{¶21} At the restitution hearings, the prosecution presented the testimony of Lt. Det. Craig, who provided evidence of the economic loss suffered by GM Credit, Chase Card Members Services and Fifth-Third Bank as a result of Estes' criminal conduct. Lt. Det. Craig testified regarding three exhibits submitted by the prosecution. Lt. Det. Craig identified State's Exhibit 1 as copies of the three checks she received from Fifth-Third Bank. These were courtesy checks attached to Risthy's line of credit with the bank that were drawn for $2,000.00, $550.00, and $175.00—for a total of $2,725.00. The record demonstrates that Estes had forged Rishty's signature on these particular checks, identified himself as the payee, and deposited the money into his own checking account at Fifth-Third Bank.

{¶22} Lt. Det. Craig identified State's Exhibit 2 as documents she received from GM Credit, which detailed the items and services charged by Estes on the credit card before his criminal activity was discovered. The documents stated the final debit incurred by Estes was $10,763.33. Lt. Det. Craig identified State's Exhibit 3 as documents she received from Chase Credit Services, which indicated that the total balance on the credit card for the items and services Estes purchased with the card was $2,378.06.

{¶23} Next, the prosecution submitted evidence regarding the values of the items confiscated by law enforcement from Estes' residence, which he purchased with the GM and Chase credit cards.[2] The current values of these items were intended to be used to offset the final balances listed in State's Exhibits 2 and 3 because, following the disposition of case, the appropriate items would be turned over to the credit card companies.

{¶24} Lt. Det. Craig presented testimony regarding the value of these items. Estes' counsel objected to Lt. Det. Craig's qualifications for providing such testimony. The trial court overruled the objection. On the stand, Lt. Det. Craig testified that there were twenty-nine items seized from Estes' residence. These items included a PlayStation 3 video game console, a high-end digital camera, two

---

[2] Notably, many of the charges on the billing statements reflected Estes' purchase of food, alcohol, groceries and gas, which were items that he consumed and therefore were not recoverable.

high-quality bicycles, a desktop computer with monitor, keyboard and webcam, a printer, a minidisk player, and several other miscellaneous items.

{¶25} Instead of using the retail values indicated on the receipts and billing statements confiscated during the investigation, Lt. Det. Craig found the current selling values of these items on EBay, an online marketplace, because these items had been used by Estes and were no longer in retail condition. Lt. Det. Craig testified that she found a "high value" and a "low value" of what these items were selling for on an open market. Using the EBay values presented by Lt. Det. Craig, the trial court asked the prosecution to determine the "middle value" of the items and used those numbers to offset the restitution Estes owed to GM Credit and Chase Card Members Services. After the "middle values" of the items were assessed, Estes' restitution order was reduced to $8,388.86 in restitution to GM Credit and $2,093.61 to Chase Card Member Services.

{¶26} Estes now argues that the trial court erred in permitting Lt. Det. Craig to testify to the values of the confiscated items. Specifically, he argues Lt. Det. Craig's testimony violated the rules of evidence because she had a lack of personal knowledge, was not an expert on valuation and relied on hearsay in her testimony. Notably, Estes did not object to Lt. Det. Craig's method of valuation at the restitution hearing.

{¶27} Contrary to Estes' contentions on appeal, Evid.R. 101(C)(3) specifically provides that the Ohio Rules of Evidence, other than with respect to privileges, do not apply to miscellaneous criminal proceedings including sentencing. *State v. Cook* (1998), 83 Ohio St.3d 404, 425, 700 N.E.2d 570; Evid.R. 101(C)(3). Ohio appellate courts have ruled that because the rules of evidence do not apply to sentencing, they also do not apply to evidentiary hearings concerning restitution by offenders to victims of crimes. *State v. Riley*, 184 Ohio App.3d 211, 2009-Ohio-3227, ¶ 28, 920 N.E.2d 388; *State v. Potts*, 7th Dist. No. 07 HA 4, 2008-Ohio-643, 2008 WL 435005, ¶ 11; *State v. Tuemler*, 12th Dist. No. CA2004-06-068, 2005-Ohio-1240, ¶ 17. Consequently, the trial court was not restricted by the Rules of Evidence, including the prohibition on hearsay, in determining the amount of a restitution order. Moreover, R.C. 2929.18(A)(1), the statute governing restitution, expressly permits the trial court to consider "estimates or receipts indicating the cost of repairing or replacing property, and other information" to be used in determining the amount of restitution owed by the offender.

{¶28} It must also be noted that Estes did not suffer any prejudice as a result of the trial court's decision to use the "middle value" of the items confiscated from his residence to offset the total amount of restitution owed by him. For example, the trial court could have ordered Estes to retain the items, in

order to alleviate the victims of having to incur the time and expense of selling the items at fair market value, and instead hold Estes responsible for the entire debit he accrued on the credit cards as a result his criminal activity.

{¶29} Accordingly, we conclude that the record contained competent and credible evidence from which the trial court was able to ascertain the amount of restitution to a reasonable degree of certainty. In addition, the record also supports that the amount of restitution ordered by the trial court bore a reasonable relationship to the loss suffered by the victims and that the amount ordered did not exceed the actual loss caused by Estes' criminal conduct for which he was convicted. Based on the foregoing, we find no error in the trial court's determination of the amount of restitution. Estes' second assignment of error is overruled.

{¶30} For all these reasons, the judgment of the Seneca County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**ROGERS, P.J. and PRESTON, J., concur.**

**/jlr**