[Cite as *State v. Thornsley*, 2025-Ohio-5128.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 AP 03 0013 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2023 CR 01 0019 |
| CHAD THORNSLEY | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: November 12, 2025 |

**BEFORE:** William B. Hoffman, Robert G. Montgomery, Kevin W. Popham, Appellate Judges

**APPEARANCES:** Ryan D. Styer, Prosecuting Attorney, Tuscarawas County Prosecutor's Office, Kristine W. Beard, Assistant Prosecuting Attorney, for Plaintiff-Appellee; George Urban, for Defendant-Appellant

OPINION

*Hoffman, P.J.*

**{¶1}**   Defendant-appellant Chad Thornsley appeals the judgment entered by the Tuscarawas County Common Pleas Court convicting him following jury trial of breaking and entering (R.C. 2911.13(A)) and grand theft (R.C. 2913.02(A)(1)), sentencing him to three years of community control, and ordering him to pay restitution jointly and severally with his co-defendant, Ashley Thornsley, in the amount of $34,613.00. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}**   Furry Trails Pet Transportation Company (hereinafter "Furry Trails") is a company in Tuscarawas County, Ohio, which provides transportation services for dog breeders in the Tuscarawas County area.  Dog breeders use Furry Trails to transport puppies they have sold to buyers throughout the United States.  The business employs three people and subcontracts with numerous drivers who man ten to twelve vans weekly. The monetary exchange for each puppy upon delivery is typically cash for any amount remaining due to the breeder for the sale of the puppy, and delivery charges owed to Furry Trails.  Sometimes the drivers collect the balance due in checks, or the amount due is paid using Venmo.  At the end of a trip, drivers park the van in the Furry Trails facility, leaving the cash and checks they collected in a bag locked inside the van.

**{¶3}**   On August 28, 2022, three individuals broke into Furry Trails through the bookkeeper's office window.  The perpetrators were inside the business for over three hours.  They broke the window of a company van, stealing cash and checks valued at

over $30,000. Although the perpetrators covered some of the security cameras, video surveillance captured the movements of the three individuals inside and outside of the building.

**{¶4}** Sly Nisley, Furry Trail's bookkeeper, arrived at work on Monday morning, August 29, 2022, around 5:30 a.m. He noticed the window to his office had been pried open and the lock popped off. He saw footprints on his desk, and found a small yellow flashlight on the floor of his office. Nisley called the Tuscarawas County Sheriff's Department.

**{¶5}** The flashlight was sent to the Bureau of Criminal Identification for DNA analysis. The major contributor of the DNA was determined to be Ashley Thornsley, Appellant's wife. The rarity of the DNA match on the flashlight to Ashley was one in one trillion.

**{¶6}** Detective Jeff Moore turned the surveillance tapes into video clips and individual still photos to aid officers in executing a search warrant for the Thornsley residence. The photos showed all three people involved in the break-in were wearing gloves. Other clothing shown in the photographs included a black sweatshirt; black tennis shoes; a black and grey gator; and black, yellow and red knit gloves. The photos showed a flashlight with an orange thumb cap. The videos showed three people: a short thin woman, a much taller man with glasses, and a slender man.

**{¶7}** During the search of the Thornsley residence, police found a black sweatshirt; black tennis shoes; a black flashlight with an orange thumb cap; black gloves; black, red and yellow knit gloves, and a grey and black gator. The clothing found appeared to match the clothing worn by the perpetrators during the break-in.

{¶8} Appellant and Ashley were detained for questioning. Appellant told police he had worked as a driver for Puppy Love Transport. Puppy Love is a similar, competing puppy transport business located in the area, which was started by former employees of Furry Trails.

{¶9} To calculate the loss from the break-in, Nisley contacted the breeders to create a spreadsheet showing the amount of cash and checks located inside the van. Through conversations with clients of the business, Nisley determined $12,700.00 was missing for shipping costs owed to Furry Trails, and $21,913.00 was missing for unpaid balances due to sellers and collected by the drivers upon delivery of the puppies.

{¶10} Appellant and Ashley were indicted by the Tuscarawas County Grand Jury with breaking and entering and grand theft. The Thornsleys were both represented by the same attorney. Appellant and Ashley filed a joint notice of alibi, claiming they were at an address in Canton at the time of the crimes, and listing an alibi witness.

{¶11} On October 10, 2023, one day before trial, the State filed a motion to amend the indictment. The indictment alleged the date of the crimes was August 29, 2022. The State asked to amend the indictment to allege the crimes occurred on August 28, 2022. The trial court granted the motion to amend the date of the indictment on the morning of trial.

{¶12} Before trial began, the trial court addressed Appellant concerning the joint representation of himself and his wife by the same attorney. The court advised both Appellant and Ashley he would appoint separate counsel if they so desired. Counsel represented to the court they had the same claim of innocence and did not intend to testify

against each other.  The trial court personally addressed each defendant, and both Appellant and Ashley indicated they had no concerns about joint representation.

**{¶13}** Following jury trial, Appellant and Ashley were both found guilty of both counts.  The trial court convicted them upon the jury's verdict.  The trial court sentenced each defendant to three years of community control and ordered the defendants to pay $30,000 in restitution jointly and severally, subject to a later restitution hearing.

**{¶14}** Appellant and Ashley both appealed.  This Court found the trial court's judgment of conviction and sentence in each case was not a final, appealable order because of the trial court's failure to determine an amount of restitution.  *State v. Ashley Thornsley*, 2024-Ohio-5726 (5th Dist.); *State v. Chad Thornsley*, 2024-Ohio-5727 (5th Dist.).  Upon remand, the trial court held a restitution hearing.  The trial court issued a new sentencing entry, sentencing Appellant and Ashley to three years of community control, and ordering them to pay restitution jointly and severally in the amount of $34,613.00.

**{¶15}** It is from the March 24, 2025 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:


I. THE APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL WHEN COUNSEL'S JOINT REPRESENTATION OF BOTH THE APPELLANT AND HIS CO-DEFENDANT PREJUDICED THE APPELLANT'S ABILITY TO DEFEND HIMSELF AGAINST THE INDICTED CHARGES.

II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE STATE OF OHIO TO AMEND ITS INDICTMENT AGAINST THE APPELLANT JUST MINUTES BEFORE TRIAL DESPITE THE APPELLANT'S OBJECTION AND TIMELY NOTICE OF AN ALIBI DEFENSE.

III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ADMITTING HEARSAY EVIDENCE UNDER AN INAPPLICABLE EXCEPTION TO RULE 802 OF THE OHIO RULES OF EVIDENCE, AND SUCH ERROR MATERIALLY AFFECTED THE OUTCOME OF THE CASE.

IV. THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION AGAINST THE APPELLANT FOR EACH OF THE INDICTED CHARGES, THEREBY VIOLATING HIS DUE PROCESS RIGHTS.

V. THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

VI. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED THE APPELLANT TO PAY RESTITUTION IN AN AMOUNT THAT WAS NOT SUPPORTED BY COMPETENT AND CREDIBLE EVIDENCE.

VII. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO TAKE MANDATORY JUDICIAL NOTICE THAT THE COMPLAINANT'S STATEMENTS WERE FACTUALLY IMPOSSIBLE

GIVEN INFORMATION THAT WAS READILY AVAILABLE TO THE PUBLIC AND PROVIDED DIRECTLY TO THE TRIAL COURT.

VIII. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT IMPOSED AN ALCOHOL AND DRUG PROVISION AGAINST THE APPELLANT.

IX. THE APPELLANT WAS DENIED THE RIGHT TO A FUNDAMENTALLY FAIR PROCEEDING DUE TO CUMULATIVE ERROR.

I.

{¶16} In his first assignment of error, Appellant argues the trial court erred in allowing him to be represented by the same attorney who represented his wife and co-defendant, Ashley. We disagree.

{¶17} In order to establish a Sixth Amendment violation due to a conflict of interest, a defendant who failed to object at trial must demonstrate an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348. A possible conflict of interest exists where the "interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties." *Id*. at 356. An actual conflict of interest exists if, "during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action." *Id*. A lawyer represents conflicting interests "when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." *State v. Gillard*, 78 Ohio St. 3d 548, 552-553 (1997).

**{¶18}** In the instant case, the trial court addressed Appellant personally regarding joint representation of counsel:

THE COURT: Okay and Chad, likewise for you, same comments. If for whatever reason you thought that you would be better served by having separate counsel, the Court would appoint separate counsel for you but I'm not going to impose that on you because you could – If you want Mr. Benbow to represent you, you do have that competing right to have counsel of your choice to represent you but there are times where if it's just an obvious conflict where, you know, one side's pointing the finger at the other side that the Court could step in and say, no, this is not going to happen. I don't sense that in this case. It seems as if you're both just saying that there's an alibi here but I wanted to make sure we're clear on the record. Are you satisfied in having Mr. Benbow represent you? I would not force you to go forward today. I would give you a continuance and allow you to have separate counsel if you felt that you were in any way uncomfortable having the same lawyer represent you and your wife.

MR. THORNSLEY: I'm okay with it.

**{¶19}** Tr. (1) 15.

**{¶20}** Because Appellant did not object to the dual representation, he must demonstrate an actual conflict of interest. Appellant argues the overwhelming amount of evidence against Ashley misled the jury into convicting him based on nothing more than

guilt by association.[1]  He argues had the trials been conducted separately, the evidence against Ashley would not have been presented, and thus would not have compounded against him.

**{¶21}**  However, Appellant has not advanced a legal argument demonstrating had he been represented by separate counsel, he would have been entitled to a separate trial. Further, he has not set forth a legal argument demonstrating the evidence against Ashley, specifically the flashlight found at the scene and the clothing seized from their home, which Ashley was seen wearing in the pictures and security video from the scene, would have been inadmissible against him.

**{¶22}**  The State presented evidence clothing similar to the clothing worn by one of the men in the video was seized from Appellant's home, and the jury had the opportunity to compare the size and stature of the man in the video to Appellant's size and stature.  Further, Appellant admitted to police he was familiar with the operations of a competing and similar business to Furry Trails as a former employee of Puppy Love. At trial, Appellant and Ashley did not attempt to cast blame on the other, but rather attacked the credibility and sufficiency of the State's evidence generally.  They had a mutual defense at trial, both claiming they were not present and did not participate in the break-in and theft.  We find the record does not demonstrate an actual conflict of interest.

**{¶23}**  The first assignment of error is overruled.

II.

**{¶24}**  In his second assignment of error, Appellant argues the trial court erred in granting the State's motion to amend the date of the indictment.  We disagree.

---

[1] We note Ashley Thornsley makes a similar argument in her brief, claiming the evidence was stronger against Appellant.

**{¶25}** Crim. R. 7(D) provides in pertinent part:

The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.

**{¶26}** An appellate court reviews a trial court's decision to allow the amendment of an indictment for an abuse of discretion. *State v. Boyd*, 2025-Ohio-617, ¶ 11 (8th Dist.). An abuse of discretion implies a court's ruling is unreasonable, arbitrary, or unconscionable, and is more than a mere error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶27}** In the instant case, the indictment alleged the offenses occurred "on or about" August 29, 2022. The State filed a written motion to amend the indictment the day before trial to change the date to August 28, 2022. Appellant responded, arguing he would be prejudiced by the amendment due to his intention to present an alibi defense.

**{¶28}** The parties argued the motion to the court prior to voir dire. The State represented Appellant was aware of the August 28, 2022 date because the evidence provided in discovery spoke to the August 28 date, rather than to August 29. The State represented the appropriate remedy would be not to deny the motion, but to grant a continuance to allow the defense to prepare appropriately. The State represented to the

extent the defendants were prejudiced by the amendment, it would not oppose a motion to continue.

{¶29} Counsel for Appellant represented at this point in time, he was unsure if the alibi witness would testify or not. He acknowledged he had not subpoenaed the alibi witness. The trial court asked counsel how the change in date prejudiced the defense. Counsel responded he had not talked to the alibi witness to see if he could testify he was with the defendants on August 28. The trial court questioned counsel further as follows:

THE COURT: Okay. Well, him aside, other than talking with him, do you see any other way – How does this, because especially in light of the fact that the Indictment is framed in a way of On or About and we're talking about the difference of the Twenty-Ninth or the Twenty-Eighth? Is there something other than, that you know of, that this would prejudice –

MR. BENBOW: No.

THE COURT: - the Defendants in this case?

MR. BENBOW: No, other than just not having a whole – having enough time to talk to the actual witness. That's it.

{¶30} Tr. (1) 11-12.

{¶31} The trial court granted the motion to amend the indictment, allowing Appellant to present an alibi witness for the new date if so desired.

{¶32} We find the trial court did not abuse its discretion in allowing the State to amend the indictment. Appellant did not dispute the State's representation he received

discovery which indicated the date was actually August 28, not August 29. The alibi witness had not been subpoenaed, and Appellant did not request a continuance to prepare for the change in the date, instead representing counsel could make a phone call and have the alibi witness in court the same day. The amendment did not prejudice Appellant in calling the witness, as the trial court specifically stated Appellant would be permitted to call his alibi witness as to the amended date. Counsel represented the only prejudice to Appellant was not having time to talk to the alibi witness; however, Appellant did not request a continuance, which would have been unopposed by the State, to give counsel more time to prepare.

{¶33} The second assignment of error is overruled.

III.

{¶34} In his third assignment of error, Appellant argues the trial court erred in admitting the spreadsheet prepared by Syl Nisley pursuant to Evid. R. 803(6). We disagree.

{¶35} "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271(1991).

{¶36} Evid. R. 803(6) provides the following are not excluded by the hearsay rule:

(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity,

and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶37} To qualify for admission under Rule 803(6), a business record must have four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the custodian of the record or by some other qualified witness. *State v. Davis,* 2008-Ohio-2, ¶ 171. Even if these elements are established, a business record may be excluded from evidence if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.*

{¶38} Appellant first argues the spreadsheet created by Nisley to determine the amount of money lost in the theft from the cargo van was not kept in the course of a regularly conducted business activity, and it was not the regular practice of Furry Trails to make the report.

{¶39} Nisley testified he did not have records regarding the amount of money which should have been present in the envelope in the van. Rather, the receipts were

kept in the cash envelope.  Nisley testified regarding his regular practice as bookkeeper of the business when the envelope was returned to him:

Q. So, if someone contracts with you and the order is made – so you've had contact with seller and buyer and know the details of the transaction, correctly – is that correct?

A. Yes.

Q. Okay.  This would include I guess who's paying the delivery fee and what money needs to be collected from the purchaser or buyer when you get there?

A. Correct.

Q. And is there a record of this at Furry Trails?

A. After it comes back.  After everything comes back and the routes come back with all that paperwork because things can change along the way.

Q. Okay.  Is there records of that order though for them to know, you know, where – who the seller is, what's being delivered and who the buyer is?

A. Yes.

Q. Okay but ultimately at the end when the driver returns there's additional paperwork done?

A. Yes.

{¶40} Tr. (1) 151.

{¶41} Whether created after delivery using the receipts in the cash envelope in order to determine how the money is to be distributed between the dog breeders and Furry Trails, or whether created in the instant case to determine the amount of loss from the theft of the cash envelope, the regular practice of the business required paperwork to be completed to determine the distribution of the money in the envelope. In the instant case, due to the loss of the receipts in the envelope, Nisley employed a different procedure to determine the amounts due the breeders and due Furry Trails. While the circumstance was not "regular" because theft is not a regular occurrence, it was the regular procedure of Nisley to complete paperwork to determine the distribution of funds after a van is returned. We find the trial court did not err in finding Nisley compiled the information in the spreadsheet in the regular course of the business of Furry Trails, and it was the regular practice of the business to complete such paperwork.

{¶42} Appellant also argues the court erred in admitting the exhibit because it was based on information provided by the breeders who were clients of Furry Trails, and not from Nisley's knowledge. Appellant argues the circumstances demonstrate a lack of trustworthiness because Nisley relied on information provided by the clients of the business. The Court of Appeals for the First District addressed a similar argument by looking to federal case law:

Fed.R.Evid. 803(6) and Ohio's version of the rule are substantially similar. Staff Notes to Evid.R. 803(6). We find federal case law to be instructive on this issue. A number of circuit courts have held that exhibits

can be admitted as business records of an entity, even when that entity was not the maker of those records, provided that the other requirements of Fed.R.Evid. 803(6) are met and the circumstances indicate that the records are trustworthy. See *United States v. Childs* (C.A.9, 1993), 5 F.3d 1328, 1333, see, also, *United States v. Travers* (C.A.9, 2004), 92 Fed.Appx. 489, 494, citing Childs, supra ("Records need not actually be prepared by the business to constitute business records, so long as they are received, maintained, and relied upon in the ordinary course of business"); *United States v. Jakobetz* (C.A.2, 1992), 955 F.2d 786, 801 ("Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity"); *Saks Internatl. Inc. v. M/V Export Champion* (C.A.2, 1987), 817 F.2d 1011, 1013–14 (documents may properly be admitted as business records even though they are the records of an entity other than one of the parties, and even though the foundation for their receipt is laid by a witness who is not an employee of the entity that owned and prepared them, provided that there are sufficient indicia of the records' reliability and trustworthiness).

**{¶43}** *Great Seneca Financial v. Felty*, 2006-Ohio-6618, ¶ 14 (1st Dist.).

**{¶44}** Although received via phone call in the instant case, we find Furry Trails incorporated the business records of their clients into the spreadsheet. Throughout Nisley's testimony, it was apparent the business must regularly rely on information provided by the sellers of the puppies as to the amounts they expect to receive on delivery

of the puppies.  We find the trial court did not err in finding the records had sufficient indicia of reliability and trustworthiness.

{¶45}  The third assignment of error is overruled.

IV., V.

{¶46}  In his fourth and fifth assignments of error, Appellant argues the judgment convicting him of breaking and entering and grand theft is not supported by sufficient evidence and is against the manifest weight of the evidence.  We disagree.

{¶47}  The term "manifest weight of the evidence" relates to persuasion. *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 19. It concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other grounds as stated in State v. Smith,* 80 Ohio St.3d 89, 102 n.4 (1997); *State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶48}  In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *Id.*

{¶49}  When conducting a manifest weight review, the question is whether the jury clearly lost its way in resolving conflicts, resulting in a manifest miscarriage of justice, even if the evidence is legally sufficient. *Id.*; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001). Appellate courts have traditionally presumed the jury's assessment is correct, given its

ability to observe witnesses' demeanor, gestures, and tone, all critical factors in evaluating credibility. *Eastley*, 2012-Ohio-2179, at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

{¶50} A manifest-weight claim succeeds only in "the exceptional case in which the evidence weighs heavily against the conviction." (Internal quotations omitted.) *Thompkins*, 78 Ohio St.3d at 387. To reverse a conviction on manifest-weight grounds, all three judges on the appellate panel must concur. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko,* 2007-Ohio-4918, ¶¶ 2-4, *citing Thompkins*, syllabus ¶ 4.

{¶51} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶52} Appellant was convicted of breaking and entering in violation of R.C. R.C. 2911.13(A), which provides, "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."

{¶53} He was also convicted of grand theft in violation of R.C. 2913.02(A)(1), which provides:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent[.]

(B)(2) …If the value of the property or services stolen is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, or if the offender has been convicted of or pleaded guilty to a felony theft offense within the previous three years, a violation of this section is grand theft, a felony of the fourth degree…

{¶54} Appellant first argues there was insufficient evidence to prove he was one of the perpetrators of the break-in and theft from Furry Trails, and also the jury lost its way in finding he participated in the crimes.

{¶55} The State presented the security video and still photos taken from the video, from which the jury, which had the opportunity to view Appellant in court, could determine one of the men involved was similar in size and stature to Appellant. Sly Nisley testified the crimes appeared to be committed by someone familiar with the business. Appellant admitted to police he worked for Puppy Love Transport, a similar type of animal-transport business started by former employees of Furry Trails. DNA on the small flashlight found in Nisley's office was a definitive match for Ashley Thornsley, Appellant's wife and co-defendant. Clothing and another flashlight seized from Appellant's home matched the clothing and flashlight depicted in the surveillance video. While Appellant characterizes the clothing as "generic," the number of clothing items viewed collectively, as well as the orange-capped flashlight, provide evidence Appellant and Ashley were two of the three perpetrators pictured in the video. We find this evidence was sufficient to identify

Appellant as one of the perpetrators of the Furry Trails break-in and theft, and the jury did not lose its way in convicting Appellant.

{¶56} Appellant also argues the evidence was insufficient to prove the amount of the theft exceeded $7,000. He first argues the spreadsheet created by Nisley, which set forth the amount of the loss, was inadmissible hearsay. For the reasons set forth in our discussion of Appellant's third assignment of error, we disagree.

{¶57} Appellant also argues even if the spreadsheet was admissible, the amounts were speculative and not credible because Nisley calculated the loss by calling clients of the business to find out how much money they were owed, and thereby calculating how much money was stolen from the van. We find the evidence of loss as set forth in the spreadsheet was sufficient evidence, if believed by the jury, to support the conviction of grand theft. The jury was aware of the process by which Nisley telephoned clients to determine the amount of the loss, and we find the jury did not lose its way in finding the amount to be credible.

{¶58} The fourth and fifth assignments of error are overruled.

VI.

{¶59} In his sixth assignment of error, Appellant argues the trial court's order of restitution is not supported by competent, credible evidence. We disagree.

{¶60} A trial court has discretion to order restitution in an appropriate case and may base the amount it orders on a recommendation of the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, but the amount ordered cannot be greater than the amount of economic loss suffered as a direct and proximate result of the commission

of the offense. *State v. Lalain*, 2013-Ohio-3093, ¶ 27. The evidence which supports a court's restitution order can take the form of either documentary evidence or testimony. *State v. Moore*, 2022-Ohio-4261, ¶ 12 (5th Dist.).

**{¶61}** Evid. R. 101(D)(3) provides the Rules of Evidence, except with regard to privilege, do not apply to sentencing proceedings. Because the Rules of Evidence do not apply to sentencing, they also do not apply to restitution hearings. *See, e.g., State v. Estes*, 2011-Ohio-5740, ¶ 27 (3rd Dist.).

**{¶62}** Nisley testified at the restitution hearing he created a spreadsheet of the sellers which were missing funds as a result of the theft. He testified the total amount of shipping fees missing which would have been payable to Furry Trails was $12,700. He testified the amount due to the puppy sellers which was stolen from the van was $21,913. He testified Furry Trails paid the sellers the amount due them. We find Nisley's testimony sufficient to support the trial court's restitution order of $34,613.

**{¶63}** Appellant argues the record does not reflect whether an insurance company may have reimbursed some of the losses. We disagree. The victim in this case was Furry Trails, who did not receive insurance coverage to protect the loss. Tr. (Restitution) 14. As to the puppy breeders, Nisley testified he did not ask whether any of them received insurance coverage, but he doubted the breeders made an insurance claim because they were paid by Furry Trails. Tr. (Restitution) 22-23.

**{¶64}** We find the trial court did not abuse its discretion in ordering restitution in the amount of $34,613.

**{¶65}** The sixth assignment of error is overruled.

VII.

{¶66} In his seventh assignment of error, Appellant argues the trial court erred in failing to take judicial notice following the restitution hearing of two facts: (1) the route Nisley claimed his drivers embarked on in five days was impossible to complete, and (2) there was no business registered with the Ohio Secretary of State's office as "A & L Pet Service," the official name of the business as testified to by Syl Nisley. We disagree.

{¶67} Evid. R. 201 provides:

(A) Scope of Rule. This rule governs only judicial notice of adjudicative facts; i.e., the facts of the case.

(B) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(C) When Discretionary. A court may take judicial notice, whether requested or not.

(D) When Mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

{¶68} Appellant did not ask the trial court to take judicial notice of any facts at the restitution hearing. The trial court allowed the parties to file written closing arguments following the hearing. In his written closing argument, Appellant asked the trial court to

take notice of the above-referenced facts, attaching documents printed from the internet in support of his request.

## Impossibility of Delivery Route

{¶69} Appellant attached a map printed from the internet and a "route summary" also printed from the internet to his closing argument The route summary sets forth a drive time to complete the route of four days, two hours, and twenty minutes. Appellant argues the two drivers assigned to the route could not have completed the route from Monday through Saturday considering the time required to bring the puppies to the Furry Trails facility for veterinarian checks, make deliveries to buyers, and stop for restroom and meal breaks.

{¶70} In *Rude v. NUCO Edn. Corp.,* 2011-Ohio-6789 (9th Dist.), a party asked the appellate court to take judicial notice that "there are no fewer than eleven registered nursing programs in Northeast Ohio alone." The court held it could not take judicial notice of the number of registered nursing programs in Northeast Ohio because the source of information offered, which was a link to a website for the Ohio Board of Nursing, did not supply the information in a manner which allowed for judicial notice of a discrete fact without further inquiry. *Id.* at ¶ 16.

{¶71} Similarly, in the instant case, the information provided did not provide the information in a manner which would allow the court to take judicial notice without further inquiry. The record does not demonstrate the time the drivers began the delivery route or ended the delivery route. The record does not demonstrate whether the route taken by the drivers was the same as the route provided in the internet summary, nor does the record show what traffic conditions were at the time the map was created. There are too

many variables involved in the cross-country trip to determine solely from a map, without further information, they could not have completed the route. We find the trial court did not err in failing to take judicial notice. The proper mechanism to challenge Nisley's credibility regarding the delivery route at issue in the instant case was by way of evidence presented at the hearing.

### Official Name of the Business

{¶72} Appellant asked the trial court to take judicial notice of the official name of the business known as Furry Trails. On cross-examination, Nisley testified the registered name of the business was A & L Pet Services, LLC, but they refer to everything as "Furry Trails." Tr. (Restitution) 48. He testified A & L paid the loss to the sellers. Appellant provided documentation asking the trial court to take judicial notice no such business was incorporated until after the restitution hearing.

{¶73} We find the actual registered name of the business was not an adjudicative fact at issue in the case. Appellant argues because Nisley testified A & L paid the sellers for the money lost in the theft, if A & L did not exist at the time, he could not be required to pay restitution. We disagree. It is apparent from the record the official name of the business at the time was immaterial because it was clear the money was paid by the business known as Furry Trails:

THE COURT: Okay. Before you step down, I have just a couple questions. One, and I think you just clarified but just to make sure I'm clear, A and L, it's called A and L Pet Service?

MR. NISLEY: Correct.

THE COURT: And Andy was the member –

MR. NISLEY: Correct.

THE COURT: -- of it and they do business as Furry Trails?

MR. NISLEY: Correct.

THE COURT: Okay, that's what I thought, just wanted to make sure I had that clear. Whether it was A and L doing business as Furry Trails, that entity, somebody you're saying paid back the sellers twenty-one thousand nine hundred and thirteen dollars?

MR. NISLEY: That is correct.

**{¶74}** Tr. (Restitution) 48-49.

**{¶75}** We find the trial court did not err in failing to take judicial notice the name of the business was not incorporated until after the hearing.

**{¶76}** The seventh assignment of error is overruled.

VIII.

**{¶77}** In his eighth assignment of error, Appellant argues the trial court abused its discretion in ordering him to abstain from drugs and alcohol as a condition of community control. We disagree.

**{¶78}** The State argues because Appellant failed to object to the condition of community control, he has waived all but plain error. On the facts and circumstances of this case, we agree.

**{¶79}** In *State v. Bright*, this Court held a defendant who failed to object at the sentencing hearing to a condition of community control ordering her to abstain from drugs

and alcohol waived all but plain error. *State v. Bright,* 2025-Ohio-725, ¶¶ 7-8 (5th Dist.). We noted had the trial court pronounced sentence and left the bench without giving the parties an opportunity to object, Bright could not be faulted and plain error would not apply. *Id.* at ¶ 8. However, because the trial court asked the parties at the end of the hearing if they had anything to say, and Bright failed to object, plain error applied. *Id.* at ¶ 9.

**{¶80}** In the instant case, the trial court informed Appellant his community control would include "using no drugs, alcohol, substance of abuse, no bars or taverns." Sent. Tr. (12/13/23) 7. When asked if he was willing to abide by those conditions, Appellant represented he was. [2] *Id.* at 11. At the end of the hearing, the trial court asked the parties if they had anything else to address, and Appellant did not object to the condition of community control. Further, after the restitution hearing conducted on remand, the trial court held another sentencing hearing. At this hearing, Appellant did not object to the condition of community control, and stated he "would refer to that previous sentencing as the guiding rule of the case" and only address restitution. Sent. Tr. (3/21/25) 3.

**{¶81}** We therefore must find plain error in order to reverse. To establish plain error, Appellant must show an error occurred, the error was obvious, and there is a reasonable probability the error resulted in prejudice, meaning the error affected the outcome of the trial. *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, *citing State v. Rogers,* 2015-Ohio-2459, ¶ 22.

**{¶82}** Appellant argues the drug and alcohol prohibition did not bear a rational nexus to the crimes of which he was convicted. Under Ohio law, a sentencing court in a

---

[2] Although not argued by the State of Ohio, Appellant's response may invoke the invited error doctrine.

felony case "may directly impose a sentence that consists of one or more community control sanctions[.]" R.C. 2929.15(A)(1). As part of those sanctions, a trial court "may impose any other conditions of release under a community control sanction that the court considers appropriate[.]" *Id*. Sentencing courts "thus [have] broad discretion ... in imposing community-control sanctions." *State v. Talty,* 2004-Ohio-4888, ¶ 10. Sanctions available to a sentencing court include "[a] term of drug and alcohol use monitoring[.]" R.C. 2929.17(H).

**{¶83}** The authority to impose community-control conditions is not, however, absolute. *Talty* at ¶ 11. Restrictions imposed as part of a community-control sentence "cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty." *State v. Jones*, 49 Ohio St.3d 51, 52 (1990), *citing State v. Maynard*, 47 Ohio App.3d 76, 77 (6th Dist. 1988). In determining whether a community-control condition is appropriate, courts must "consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Id*. at 53.

**{¶84}** This Court has found a trial court's imposition of a community-control sentence which included a ban on the use of medical marijuana by the defendant was an abuse of discretion where nothing in the record indicated drugs or alcohol were involved in the offense. *State v. Lynn*, 2023-Ohio-4429, ¶ 49 (5th Dist.). This Court observed, "[s]everal Ohio courts have required some nexus between an offender's crime and drug or alcohol abuse in order to uphold an alcohol-related community-control condition." *Id*.

at ¶ 48. The defendant in *Lynn* objected to the condition in the trial court, and we therefore applied the abuse of discretion standard of review in this court. *Id*. at ¶ 6.

**{¶85}** Nothing in the instant case demonstrates a nexus between the crimes of which Appellant was convicted and the condition of community control requiring him to abstain from drugs and alcohol.  In *Bright* we applied the plain error standard of review to the same situation, as in that case the record did not reflect drugs or alcohol played a role in the offense:

> But was the sentence in this case plainly erroneous? We readily conclude that it was not. Trial courts enjoy "broad discretion" to impose community-control conditions that are reasonably related to the goals of rehabilitation, administering justice, and ensuring good behavior. *City of Cleveland v. Pentagon Realty, LLC,* 2019-Ohio-3775, ¶ 10, 13 (8th Dist.). And our review of the no-alcohol and no-entry-into-bars supervision terms "must be conducted 'with the understanding that the court will act reasonably at a revocation hearing, aware of the practicalities and fundamental goals of probation.'" *State v. Ice*, 2024-Ohio-5341, ¶ 27 (7th Dist.), *quoting State v. Jones,* 49 Ohio St.3d 51, 55 (1990).

> Plain error should be found — and the outcome in a criminal case overturned because of it — "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Jackson*, 2025-Ohio-109, ¶ 54 (8th Dist.), *quoting State v. Long*, 53 Ohio St.2d 91, 97 (1978). *See also State v. Gasper,* 2024-Ohio-4782, ¶ 14 ("To

show reversible error under plain-error review, ... the deviation must have affected substantial rights").

To be sure, the alcohol-related conditions imposed by the trial court in this case limit Bright's choices and her freedom of movement, but state and federal courts have long recognized that "a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *United States v. Knights*, 534 U.S. 112, 119 (2001). *See also State v. Chapman,* 2020-Ohio-6730, ¶ 16 ("because convicted criminals serving their sentences enjoy diminished liberty interests when compared with the general population, a trial court can impose community-control sanctions that limit the offender's fundamental rights, provided that such limitations further the statutory goals of community control and are not overbroad").

The trial court's decision to include the no-alcohol and no-entry-into-bars restrictions in this assault case did not undercut defendant Bright's substantial rights or impose a manifest injustice on her, and this is surely not the kind of exceptional case that calls out for corrective action on our part now. In short, we find no plain error here.

**{¶86}** 2025-Ohio-725, ¶¶ 15-18.

**{¶87}** Likewise, in the instant case we find the trial court's inclusion of the "no alcohol, drugs, or bars" condition did not impose a manifest injustice on Appellant, particularly as he affirmatively agreed to the conditions of community control at his first

sentencing hearing, and failed to raise an objection to the condition at his resentencing hearing.

**{¶88}** The eighth assignment of error is overruled.

IX.

**{¶89}** In his ninth assignment of error, Appellant argues the cumulative effect of the errors in his trial require reversal. We disagree.

**{¶90}** In *State v. Brown*, 2003-Ohio-5059, the Ohio Supreme Court recognized the doctrine of cumulative error. However, where we have found the trial court did not err, cumulative error is inapplicable. *State v. Carter*, 2003-Ohio-1313, ¶ 37 (5th Dist.). In the instant case, we have found no error. Therefore, the doctrine of cumulative error is inapplicable to this case.

**{¶91}** The ninth assignment of error is overruled. The judgment of the Tuscarawas County Common Pleas Court is affirmed. Costs are assessed to Appellant.


By: Hoffman, P.J.

Montgomery, J. and

Popham, J. concur